## ELLEN S. PRIEST *vs.* INHABITANTS OF GROTON.

At a term of the superior court at which verdict was rendered in a case, exceptions were filed by agreement, and no judgment was entered, but the case continued to the next term, on the last day of which the exceptions were allowed and returned to the files by the judge, and they were entered on the proper docket of this court twenty-seven days afterwards and more than a month before the next law term, at which in the usual course they would be argued. *Held*, that they were duly allowed in the superior court, and seasonably entered in this court.

A petition to establish the truth of exceptions to be argued in the law term of this court for the Commonwealth must be entered on the docket of said court within a reasonable time after they are taken, and at the same term at which they would by law be entered if duly signed and allowed.

This court, at its term for a county, questions of law arising in which are to be argued in the law term for the Commonwealth, has no jurisdiction of a petition to establish the truth of exceptions arising in that county.

In an action for an injury alleged to have been caused to a traveller by a defect in a highway which the defendant town was bound to keep in repair, the answer denied each and every allegation of the declaration. At the trial, the only defect contended for by the plaintiff was the absence of a railing by the side of the way at the time of the accident; and the town did not deny that there was no such railing at that time, but only that the absence of it was a defect, and conceded that the way had been in substantially the same condition for the five years previous, and that its condition was known to every town officer. *Held*, that the plaintiff was not bound to accept these concessions, and might prove both that the defect had existed more than twenty-four hours, and that the town had notice of it.

On the trial of an action for physical injuries sustained by the plaintiff, the physician who attended her, being called as a witness in reference to the nature of the injuries, was asked and answered questions objectionable as calling for his judgment on the credibility of information given him concerning them and on the truth of controverted facts. But before his examination was finished, on the suggestion of the judge, hypothetical questions upon the same points were put to and answered by him in a manner avoiding such objections; and the judge thereupon instructed the jury that they should exclude from their consideration the previous questions and answers. *Held*, that the defendant had no ground of exception without some evidence that he was prejudiced by this course of examination of the witness.

Priest *v.* Groton.

At the trial of an action for an injury alleged to have been caused to the plaintiff by a defect in a highway which the defendant town was bound to keep in repair, and on which the plaintiff was travelling, in a vehicle, with a companion, who was driving at the time of the accident, a witness for the town, who came to the place of the accident immediately after its occurrence, testified that he then asked the plaintiff's companion how it happened, and she replied that she did not know unless the horse was frightened or she pulled the wrong rein. *Held*, that evidence was inadmissible, in the plaintiff's behalf, for the purpose of contradicting the witness, that the witness, being himself asked, later on the same day, how the accident happened, replied that the horse shied.

TORT for injuries alleged to have been occasioned to the plaintiff by a defect in a highway, which the declaration alleged that the defendants were bound to keep in repair, but negligently suffered to be out of repair, whereby the plaintiff, travelling thereon and using due care, was hurt. The answer merely denied each and every allegation of the declaration. Trial in the superior court, at June term 1869, before *Putnam*, J., who, after a verdict for the plaintiff, allowed a bill of exceptions.

The dockets of the superior court contained the following entries in the case: Of June term 1869 — "July 3, verdict for plaintiff $2250; July 7, motion for new trial; July 7, exceptions filed by agreement." Of September term 1869 — "June, verdict for plaintiff; motion for new trial; exceptions filed by agreement, and allowed. Law." September term was adjourned without day on the 15th of October. The certificate of the presiding judge, allowing the exceptions, stated that the intervening delay had been necessary for that purpose; and bore no date. The exceptions allowed were entered on the law docket of this court at Boston on the 11th of November.

The defendants addressed a petition to this court " within and for the county of Middlesex," alleging that their bill of exceptions, as originally filed and presented to the superior court, was in conformity with the truth, and should have been allowed; but that it was materially altered by the presiding judge in certain particulars, which they specified; and praying for leave to establish the truth of their exceptions as originally presented This petition was entered by the defendants on the 2d of November in the clerk's office of this court for the county of Middlesex, during October term of this court in that county; and

on the 12th of January, during the second week of the present
term, in the clerk's office of this court for the Commonwealth in
Boston.    The defendants' counsel made affidavit that a copy of
the petition was served on the plaintiff's counsel on the 2d of
November.

The plaintiff now moved to dismiss the exceptions allowed,
and also the petition to establish the truth of the exceptions as
originally presented.

*T. H. Sweetser & F. A. Worcester*, for the plaintiff.

*A. A. Ranney*, for the defendants.

GRAY, J.    These motions present important questions of prac-
tice as to the time and manner of bringing before this court ex-
ceptions alleged to the rulings and instructions of the superior
court.

1. The plaintiff in the first place objects that the exceptions
were not duly allowed by the superior court.    But the docket
of that court of June term 1869, at which the verdict was re-
turned, shows that the exceptions were filed by agreement, and
does not show that judgment was rendered on the verdict ; and
by the existing laws no judgment could be entered, unless the
exceptions were adjudged immaterial, frivolous, or intended for
delay.    Gen. Sts. *c.* 115, § 9.    The case was therefore continued
with other unfinished business to the ensuing September term ;
and at that term the exceptions appear to have been allowed
and filed by the presiding judge.    The objection that they were
not duly allowed cannot therefore be sustained.

In *Barstow* v. *Marsh*, 4 Gray, 165, cited for the plaintiff, the
docket of the term at which the trial was had stated that no ex-
ceptions were filed, and contained nothing from which a contin-
uance of the case could be inferred ; and by the laws then in
force a formal judgment was entered on the verdict in the court
below, under the general order at the close of the term, even in
cases in which exceptions had been taken.    Rev. Sts. *c.* 82, § 13

2. The plaintiff in the next place objects that the exceptions
were not seasonably entered.    In support of this objection, she
relies upon the provision of the Gen. Sts. *c.* 115, § 12, that copies
and papers relating to a question of law, raised by bill of excep-

tions or otherwise, " shall, within twenty days from the adjourn-
ment of the court for that term without day, be transmitted to
and entered in the law docket of the supreme judicial court for
the proper county." But by the St. of 1864, *c.* 111, such copies
and papers shall be so transmitted and entered " as soon as may
be after such question of law is reserved and duly made matter
of record in the court where the action is pending," and so much
of the Gen. Sts. *c.* 115, § 12, " as is inconsistent herewith, is
hereby repealed." The effect of the St. of 1864 is to change
the corresponding provision of the General Statutes in two im-
portant particulars. It enables questions of law to be transmit-
ted to, and entered on the law docket of, this court at any time
after they become matter of record in the court in which they
are reserved, without waiting for the close of the term of that
court; and by the words "as soon as may be " it also substi-
tutes, for the definite period of twenty days, a reasonable time,
which may under some circumstances exceed that period.

The copies of papers are to be prepared and transmitted by
the clerk of the court in which the question of law arises. Gen.
Sts. *c.* 114, § 14. But the case is to be entered by the party
taking the exceptions. Gen. Sts. *c.* 112, §§ 11, 16. The clerk
of this court is not bound to enter any case without payment
of his entry fee. *Knapp* v. *Lambert,* 3 Gray, 377. In practice,
the mere name of the case is often transmitted by the clerk of
the other court to the clerk of this, and entered upon the law
docket, without insisting upon previous payment of the fees for
copies or entry, and the papers themselves are not actually cop-
ied and transmitted for some time afterwards. This course of
proceeding is found convenient by the clerks and the counsel,
in the pressure of other business, and is open to no just objec-
tion, if the cases are seasonably entered and the copies are com-
pleted and furnished to this court in time for the argument.

In this case, the exceptions were allowed and returned to the
files of the superior court by the judge at September term; and
in the absence of any evidence, either upon the exceptions or
on the docket, of the day on which this was done, it may fairly
be presumed to have been on the last day of that term, which

was the 15th of October. The case was actually entered on the law docket of this court on the 11th of November, twenty-seven days afterwards, and more than a month before the next law term, at which in the usual course the case would be argued. There does not appear to have been such unreasonable delay in entering the exceptions as to require the court to dismiss them.

3. The petition of the defendants for leave to establish the truth of the allegations contained in their bill of exceptions as presented to, but disallowed by, the superior court, stands upon different grounds; and in disposing of this petition it becomes necessary to state the provisions of the statutes more fully.

Power to entertain such petitions and to prescribe rules about them was first given to this court by the St. of 1851, *c.* 261. Under the power thus conferred, the court established a rule requiring the petition to be filed " at the term of the court at which the exceptions would by law have been entered, if duly signed and allowed." 4 Gray, 570 note. At the time of the passage of that statute and of the establishment of that rule, that term for each county in the Commonwealth was the next term for the county, whether a law term or not, although the case, when entered, was placed on the law docket. Rev. Sts. *c.* 82, §§ 6, 7, 14. *Commonwealth* v. *Marshall*, 15 Gray, 202. Upon the abolition of the court of common pleas and creation of the superior court, like powers in relation to proving exceptions alleged in the superior court were given to this court; a law term of this court for the Commonwealth was established, with a clerk of its own, at which questions of law arising in the nine eastern counties should be entered and heard; and it was provided that the copies and papers relating to any question of law arising in the superior court should, within fifteen days, at first, and afterwards twenty days, after the final adjournment of that court for the term, be transmitted to and entered in this court; but the same statutes declared that questions of law arising in the five western counties should (unless specially agreed or ordered to be entered in the law term for the Commonwealth) be entered in the separate law terms for those

counties.   St. 1859, *c.* 196, §§ 34, 36, 44.   Gen. Sts. *c.* 112, §§ 11, 26, 27, 33; *c.* 115, §§ 11, 12, 13.   After the passage of these statutes, this court, in revising its rules, included the rule requiring a petition to prove exceptions to be filed "at the term of the court at which the exceptions would by law have been entered, if duly signed and allowed."   Rule 32; 14 Gray, 349. And it was held, taking these statutes and the rule together, that in the nine eastern counties a petition to establish the truth of exceptions must be filed not only at the same term, but at the time in the term at which the exceptions, if duly allowed, should have been entered; *Elwell* v. *Dizer*, 1 Allen, 485; while in either of the five western counties such a petition might be entered at the next law term for the county.   *Whitford* v. *Knowlton*, 6 Allen, 557.

Since the General Statutes, separate terms for the entry and hearing of questions of law have been established in the counties of Bristol, Plymouth and Essex.   Sts. 1861, *c.* 206; 1862, *c.* 215; 1868, *c.* 168.   But questions of law arising in the counties of Middlesex, Norfolk, Barnstable, Nantucket and Dukes County, as well as in the county of Suffolk, are still to be transmitted to and entered at the law term for the Commonwealth at Boston; by virtue of the St. of 1864, *c.* 111, they must be transmitted and entered "as soon as may be after such question of law is reserved and duly made matter of record in the court where the action is pending;" and, construing this statute and the rule of court by the same principle which was applied to the former statute in *Elwell* v. *Dizer*, above cited, petitions to establish the truth of exceptions must be entered at the same term and within the same time.   The difficulty of determining how many days may be deemed a reasonable time for the transmission to and entry in this court is no greater in the case of such a petition than in that of exceptions which have been allowed, and may easily be avoided by promptness and attention on the part of the party alleging exceptions.

Due regard to the administration of justice requires that a petition, the object of which is to control the official certificate of the judge before whom the trial was had, by evidence in

Priest *v.* Groton.

great part oral and depending upon the recollection of witnesses, should be presented without unnecessary delay; and parties have always been held to the strictest compliance with the statute and the rule of court upon this subject. *Phillips* v. *Hoyle*, 4 Gray, 568. *Commonwealth* v. *Wilson*, 99 Mass. 427.

The necessary consequence is, that this petition cannot be entertained. Instead of being entered at the same term of this court for the Commonwealth, and at the same time in that term, as the exceptions signed and allowed in the case should have been and were in fact entered, to wit, during the adjourned session in Boston in November 1869 of the law term for the Commonwealth in that year, it was first filed here at the present term. The previous filing of the petition at October term of this court within and for the county of Middlesex was of no avail, since that was not a term at which, under the existing statutes and rule of court, either exceptions allowed or petitions to prove exceptions could be entered, and the clerk for that county had no duty or authority with respect to such a petition. See *Commonwealth* v. *Field*, 11 Allen, 498, 499. Service of a copy of the petition on the opposite party did not dispense with the duty of seasonably filing the original petition. *Marble* v. *Keyes*, 4 Gray, 570, note.          *Petition dismissed.**

---

* A similar decision was made in the case of EDWARD A. UPTON *vs.* NATHAN P. PRATT & others, in which a trial was had and exceptions were allowed at March term 1869 of the superior court in Middlesex, and a petition to establish the truth of exceptions disallowed in that court was filed in this court on the first day of this term. The case was then argued on the exceptions allowed, and is reported *post*, 551.

The Twenty-eighth Rule 1870 of this court provides that "whenever a party shall seek to establish before this court the truth of any allegations in a bill of exceptions, which a judge shall have refused to allow and sign, he shall, within twenty days after notice of such refusal, file his petition, verified by affidavit, setting forth in full said allegations and all facts material thereto, in the court in which the exceptions would by law have been entered. if duly signed and allowed; and shall, before filing his petition, give notice thereof to the adverse party, by delivering a copy thereof to him or his attorney of record. And no party shall be allowed to establish the truth of any such allegations in this court, if he shall have failed to comply with the requisitions herein prescribed."

Priest *v.* Groton.

The exceptions allowed stated the following case : The plaintiff and another woman testified that, about half past ten o'clock on a forenoon in October 1867, they were travelling in a buggy drawn by one horse, on the highway, the plaintiff's companion driving, when, at a place where the road ran along the top of an embankment, " the horse shied, or stepped quite suddenly from the travelled way at the left hand side of the driver, and ran the wheels off the bank; that the wagon was overturned, the body and hind wheels separating from the fore-axle by the transom-bolt coming out; that the horse did not go off the bank, but went slowly on with the fore wheels, without appearing to be frightened ; that the plaintiff was thrown out upon grassy ground at the side of the road, falling partly on her back and partly on her side ; and that she had been suffering since from a spinal affection and difficulty, among other things."

The only defect which the plaintiff contended that there was in the highway was the absence of any railing by the side of the road on the embankment; and the plaintiff introduced in evidence a surveyor's plan of part of the highway and the adjoining land, including the place and vicinity of the accident, and called the surveyor as a witness, who testified to the correctness of the plan, and to various measurements made by him of the width and slopes of the road and of the embankment at the place of the accident and at various points from one rod to one hundred and fifty feet distant from it. The defendants " denied that the road was defective as claimed ;" and with the plaintiff's assent, they at the same time put in evidence another plan, and memoranda of measurements made by one of their counsel, conflicting somewhat with the plaintiff's plan and measurements.

Moseley Gibson, one of the plaintiff's witnesses, testified that at the time of the accident, and for more than thirty years before, he lived at a place on the same highway, about a quarter of a mile distant from the place where the accident occurred ; " that the road at the place in question had been substantially in the same condition ever since he could remember ; " and " that he noticed this embankment the same season before the

accident." " The plaintiff then asked him, ' If you said any·
thing to Shubael Shumway, chairman of the selectmen, in refer-
ence to the state of the road or bank at this point, please state
it?' The question was objected to. The judge inquired its
object, and the plaintiff stated that it was asked for the purpose
of proving notice to the town of the state of the road, and that
the plaintiff should prove that the road had been in the same
condition for a year previous to the accident. The judge al-
lowed the question to be put, and the witness answered, ' I told
him the road was in a bad condition and there should be a rail-
ing there; and he answered that he knew it.' The defendants
objected to the answer; but the judge allowed it to stand, but
admitted it only as evidence of notice, and instructed the jury
that the evidence was admitted only for that purpose, that as an
expression of the opinion of the witness it was entirely incom-
petent, and that the reply of Shumway was entirely incompe-
tent as an expression of opinion, but only admitted to show that
he understood the statement made to him. Before the question
was put to the witness, the defendants stated that they would
concede that the road had been substantially in the same condi-
tion for five years and more, prior to the time of the accident,
and that every person in town and every town officer knew of it.
The plaintiff, however, declined to accept this concession."

William A. Webster, the plaintiff's physician, after testifying
that the plaintiff had since the accident suffered from trouble in
her back which he considered an affection of the spine, was
asked by the plaintiff the following questions, and made the
answers which are annexed to them : *Q.* " If, on examination of
her person, and the statements she made to you of her condition,
and the statements which she gave you for the purpose of inform-
ing you as to her condition, you have formed an opinion as to
the cause of her trouble in the back, I wish you would state
what, in your opinion, that cause is." *Ans.* " I did. I supposed
it to be in consequence of a fall which she had received." *Q.*
" What is your opinion now ? " *Ans.* " That it was the effect
of the injury received by the fall." " Before the examination
of the witness was concluded, the judge suggested to the plain·

tiff that he should prefer to exclude from the consideration of the jury the last two questions and answers, and suggested their being put in another form. The plaintiff then put the question : ' Assuming that the plaintiff, on the same day before you were called, had been in a wagon, and was overturned and thrown with violence on the ground, upon her back and side, would the shock of her fall be sufficient, in your judgment, to account for the injury to her back, which you saw ? ' This question was objected to, but admitted ; and the witness answered, ' I think it would ; I think a simple fall that distance might cause the injury.' The judge then told the jury that they were to exclude from their consideration the two last previous questions and answers."

Francis F. Woods testified for the defendants, that at the time of the accident he was in an orchard near the place where it occurred ; that he saw the plaintiff's buggy pass along the road, heard a scream soon afterwards, and, learning that there had been an accident, went to the place of its occurrence, and from there went after the horse, caught it, and brought it back to that place ; that " he then examined the road, and noticed the track back for fifty feet to where it left the road, deflecting from it fifty-four feet, from where it went off the bank, and he drove a nail opposite the place where it so deflected, and had measured the distance ; and that he inquired of the woman who was with the plaintiff at the time how the accident happened, and she replied that she did not know, unless the horse was frightened or she pulled the wrong rein."

" The plaintiff in reply recalled Webster, who testified that he was driving on the same road, in the afternoon of the same day, between six and seven o'clock, and had conversation with Woods ; that he was looking down from his buggy, trying to find the place of the accident ; that he asked how the accident happened ; and that Woods replied that the horse shied. The judge ruled that this answer was competent as tending to contradict Woods ; to which the defendants excepted."

Among numerous prayers for instructions to the jury, submitted by the defendants, were four, requesting rulings that the

want of a railing by the side of the way was not a defect, on assumptions respectively, that the plans and measurements respectively introduced in evidence by the parties, or specified portions of them, were correct; but the judge " declined to give the instructions asked, and left it to the jury, as a mixed question of law and fact, whether the want of a railing was a defect or not, giving them such instructions, as to when the want of a railing would be a defect or not, as seemed to the court proper and applicable, to which instructions no exception was taken if the court was right in excluding the instructions asked for."

*A. A. Ranney,* (*J. K. Bennett* with him,) for the defendants.

*F. A. Worcester & W. S. Gardner,* for the plaintiff.

AMES, J.　The defect in the highway, complained of by the plaintiff, was the want of a railing by the side of the graded or travelled way.　It was not claimed that this defect was the result of any accident, or that it was produced by any omission to keep the road in its usual state of repair, or that it was of recent occurrence.　The defect, if any, arose from an error in judgment as to the proper construction and security of the roadway.　A witness called by the plaintiff testified that he had lived near the place of the accident for thirty years or more, and that the road at that place had been substantially in the same condition ever since he could remember.　The defendants conceded that there never had been any railing by the roadside at the place in question; and that the state of things had been substantially for five years before the accident the same as it was then.

In this state of the case, there was apparently no necessity to prove express notice to the town authorities as to the condition of the road.　But as the defendants in their answer had denied everything that the plaintiff had alleged in her declaration, it can hardly be said that evidence tending to prove such express notice is literally irrelevant or immaterial to the issue. On this point she was not bound to accept their concessions made during the trial.　The liability of the town however does not depend upon and is not at all affected by express notice of

the existence of the defect, if the defect had existed for the space of twenty-four hours previous to the occurrence of the injury or damage. Gen. Sts. *c.* 44, § 22. Under the pleadings, the plaintiff was at liberty to attempt to prove both that the defect had been in existence more than twenty-four hours, and also that notice had been given, in order, if the evidence should prove insufficient as to one, to rely upon the other of those two grounds of claim. The conversation between the plaintiff's witness and the chairman of the board of selectmen, though wholly irrelevant and immaterial if it occurred more than twenty-four hours before the accident, would be competent and admissible if it occurred within that time, and related to anything in the condition of the road which did not appear to have existed longer than twenty-four hours. The bill of exceptions does not make it certain what the fact was in that respect; but, as the verdict is to be set aside upon another ground, it is sufficient for the present to point out what we understand to be the true rule upon the subject. In any view of the case, the declaration of the chairman of the selectmen was incompetent, except for the very limited application of it allowed by the court.

Of the various questions addressed to the plaintiff's attending physician, as an expert, there were two which were not in conformity to the established rule, and were open to the objection that they called for a judgment, on the part of the witness, of the credibility of information, and the truth of controverted facts. After these two questions had been put and answered, the presiding judge, on consideration, suggested that they should be put in another form; and they were accordingly put hypothetically, and upon the assumption of certain supposed facts, and were then answered in such a manner as not to include a judgment as to the reality of the assumed facts, the jury being told that the original questions and answers were to be excluded from their consideration. It is to be presumed that in this respect the jury followed the instructions of the court. The error was rather in form than substance. It was seasonably corrected, and there seems to be no reason to suppose that it operated in any way to the substantial prejudice of the defendants.

*Batchelder* v. *Batchelder*, 2 Allen, 106. *Hawes* v. *Gustin*, Ib 406. *Whitney* v. *Bayley*, 4 Allen, 173. *Selkirk* v. *Cobb*, 13 Gray, 313. *Smith* v. *Whitman*, 6 Allen, 562. *Ellis* v. *Short* 21 Pick. 142.

It does not appear to us that the court was bound to give the specific instructions, in form or substance, requested by the defendants, or to rule, as a matter of law, that, upon the assumptions suggested by them, the want of the railing would not be a defect for which the town could be held responsible. We must assume, as the case is stated in the bill, that this question, which is not often a mere question of law, was submitted to the jury with proper instructions.

Upon another point in the trial, it appears to us that an error occurred, of sufficient magnitude to render it necessary to send back the case for a new trial. One witness (Woods) called by the defendants, had testified that he saw the buggy pass near the place where the accident happened ; that he heard a scream and went immediately to give assistance ; that he inquired of the plaintiff's companion, at that time, how the accident happened and that she replied that she did not know, unless the horse was frightened or she pulled the wrong rein. The plaintiff, in reply called a witness (Webster) who testified that he was riding late in the afternoon of the same day on the same road, and was looking down, trying to find the place of the accident; that he there met Woods, and asked how the accident happened; and that Woods replied that the horse shied. This testimony was admitted, under objection, as tending to contradict Woods But it appears to us to have no such tendency. Woods had testified as to the explanation that the woman had given to him at the time, — an explanation which certainly was not given with any great positiveness or confidence. His answer to the question put by Webster was given at the place where the accident happened, and after a careful examination of the tracks, and a designation of the exact place. He did not in that answer undertake to give the woman's account, but his own version or theory of the accident in view of his own exam ination and measurements. It does not have any tendency to

disprove his testimony as to what the woman said, to prove that Woods's own view of the case was very different from hers. In his testimony on the stand, he gave her explanation of the accident, and nothing more; and the supposed conflicting statement has no reference whatever to his conversation with her. For that reason there is no real discrepancy in his two statements, and the evidence given on behalf of the plaintiff contradicted nothing, and was therefore inadmissible. It is impossible to say that this error was wholly unimportant, or had no improper influence on the minds of the jurors, and therefore the                                         *Exceptions are sustained.*