## The John Hancock Mutual Life Insurance Company v. James Moore.

*Evidence: Admissions: Record evidence.* A party can never be compelled against his will to accept his adversary's admission in lieu of record evidence.

*Evidence: Documents: Purposes.* A paper which is admissible in evidence for one purpose does not become inadmissible because it cannot be used for another.

*Life insurance: Administrator: Letters: Plaintiff's capacity: Evidence.* In an action by an administrator upon a life insurance policy, the letters of administration are admissible in evidence to show the plaintiff's capacity, and they cannot be excluded on the objection that they are no evidence of death.

*Life insurance: Proofs of death: Admission: Documentary evidence.* An admission that proofs of death had been furnished to the company, will not preclude the introduction of the documentary evidence.

*Death: Circumstantial evidence.* In civil cases death, like any other fact, may be proved by circumstantial evidence, and it is not necessary to produce an eye witness to the act.

*Life insurance: Evidence: Insanity.* Evidence tending to show that one who had disappeared had been for a considerable time laboring under a severe and dangerous disease of the brain and spine, which in the opinion of his physician must have proved fatal in a short time and must probably have rendered him insane, with evidence of its effect on his feelings and conduct, indicating that his mind was affected by the disease, is sufficient to warrant the submission of the question of his sanity, in a case where it was material, to the jury as one of fact.

*Evidence: Death: Disappearance: Search.* A sudden disappearance and the failure after search to discover any traces of a man who if living could not easily have gone unnoticed, and who was in such a physical and mental condition as to excite the anxiety of his friends, cannot be said to afford no evidence tending to prove his death, or to authorize an instruction to the jury to that effect.

*Life insurance: Policy: Conditions: Self-killing: Penalty: Forfeiture: Burden of proof.* In an action upon a life policy, a condition in the policy making it void in case the person whose life is insured die by his own hand, is to be construed as in the nature of a penalty or forfeiture, and the burden is on the insurers to show it, and not on the insured to negative it.

*Suicide: Definition: Self-murder.* The term "suicide" means self-killing, just as homicide means killing another; and it cannot be restricted in meaning to apply only to a wrongful act or self-murder.

*Life insurance: Policy: Self-killing: Classed with wrongful acts: Construction.* The act of self-killing as a cause of forfeiture being classed in the policy among others involving such wrongful conduct as death by duelling, by the hands of justice, or in the violation of the laws, or impairing health by vice or intemperance, it is to be inferred that it is regarded as *ejusdem generis* and depending on the same reasons.

34 MICH.—6.

*Life insurance: Policy: Self-killing: Condition: Forfeiture: Insanity.* Such a condition cannot be construed to cause a forfeiture for acts involving no evil will, such as self-slaughter by an insane person.

*Life insurance: Insanity: Disease.* The very object of life insurance is to provide for death by disease or in the ordinary course of nature; and death by his own hands, in the case of one *non compos*, is as much the result of disease as death by fever or consumption.

*Life insurance: Special finding: Suicide: General verdict.* In an action upon a life policy containing such a condition, a special finding of suicide, without a further finding that it was voluntary, would not conflict with a general verdict against the insurers; and the failure of the jury to answer the special question, whether the person whose life was insured committed suicide, will not vitiate or overturn the verdict.

                                        *Heard April 12.    Decided April 18.*

Error to Wayne Circuit.

*Griffin & Dickinson,* for plaintiff in error.

*Albert H. Wilkinson* and *Hoyt Post,* for defendant in error.

CAMPBELL, J :

The suit below was on a life policy in favor of William Todd, who was claimed to be dead, but whose death was sought to be proved by his disappearance, aided by circumstantial testimony.

The defense relied on was, *first,* that he was not shown to be dead, and *second,* that if dead he died by his own act.    The policy contained this clause : "3.  That in case the person whose life is hereby insured shall die by his own hand," &c., &c., &c., "this policy shall be void, and the company shall not be liable for the loss."

An error is alleged on the reception in evidence of the letters of administration.    Defendants below admitted their existence and the representative character of Mr. Moore, but objected to the admission of the letters themselves, because they were not evidence of the death of Todd.    The court held they were not evidence of death, but admitted them in proof.

We do not quite comprehend the objection.    A party

can never be compelled to accept his adversary's admission in lieu of record evidence unless he chooses, and a paper which is admissible for one purpose does not become inadmissible because it cannot be used for another. The letters were proper to show the plaintiff's capacity, and could not be excluded on any theory. Whether they proved death, was another matter, and in this case the court held they did not.

The same remark will apply to the proofs of death submitted to the company under the requirements of the policy. The admission that such proofs had been furnished did not render it improper to produce the documentary evidence and thus prevent any subsequent disputes as to the meaning and extent of admissions.

And it would be difficult to see how a party can be damnified by proof which accords with his admissions.

The principal questions arise upon the rulings in the cause as it went to the jury.

The defendant below's first request was as follows: "That under the law there is no presumption of death until after a disappearance of seven years, and that the burden of proof is upon the plaintiff in this case to show the fact of death; that it is not incumbent upon the insurance company to show that the insured is not dead, until after the lapse of seven years from date of disappearance."

This the court gave; but stated to the jury in substance, that death might be shown otherwise than by the production of an eye-witness to the act, and might be shown by satisfactory circumstances.

This was unquestionably correct. There is no doctrine which in civil cases requires death to be proved by any more conclusive or peculiar evidence than any other fact material to recovery in an action. If the testimony satisfies the court or jury passing on the facts, and is reasonably sufficient, and compels belief, the conclusion is certainly lawful.

Upon the rulings of the court upon the second, third and fourth requests of defendant below, no exception was

taken. They were substantially granted, and related to the necessity of diligent search and inquiry after the missing man, and the question of suicide and the presumption of insanity.

Three requests were refused, which were: 5. That there was no evidence of Todd's insanity at the time of his disappearance; 6. That there was no evidence of his death; and 7. That under the evidence plaintiff could not recover.

The evidence tended to show that Todd had been for a considerable time laboring under a very severe and dangerous disease of the brain and spine, which in the opinion of his physician must have proved fatal in a short time, and must probably have rendered him insane. There was evidence of its effect on his feelings and conduct, indicating that his mind was affected by the disease. The testimony was such as to have a decided bearing on the question of his sanity, and it was for the jury to pass upon it. It is not for us to review their finding, if there was evidence before them to be acted on. We have no means of knowing what they thought of it, as they have not found specially on the subject.

As to the fact of death, we think there was not only competent evidence, but such as they were fully justified in accepting as complete. A sudden disappearance, and the failure to discover any traces of a man who if living could not easily have gone unnoticed, and who was in such a physical and mental condition as to excite the anxiety of his friends upon this very subject, cannot be said to afford no evidence tending to prove his death. The instructions of the court as to the diligence needed for a search after him, were full and correct. The assiduity of friends in pursuing the inquiry was great and constant. We think the jury had enough to act upon.

They found a general verdict for the plaintiff. They were asked to find whether Todd committed suicide, and answered they could not say. It is claimed this vitiated their verdict.

Plaintiff in error insists that the burden of proof is on the administrator to prove that Todd did not die by his own hand, and also, that if he did so, the policy is void, whether he was sane or insane.

The condition which makes the policy void in case of such a death, is in the nature of a penalty or forfeiture, and the burden is on the insurers to show it, and not on the insured to negative it. There can be no presumption of wrong-doing without proof, and the insured is not bound to show that his intestate had done no act to destroy an existing right in the policy. This would be to reverse the burden of proof generally adopted. Usually where the death is not proved by eye-witnesses the circumstances are such that the order of proof becomes less material, and the facts connected with the death may be so peculiar as to need explaining. Of course if the plaintiff suing upon a policy throws doubt over his own case, or if his witnesses by their examination and cross-examination leave his case imperfect, he must clear it up or be defeated. But when all the testimony on both sides is in, any inference which will lead to a forfeiture can only be properly drawn from a preponderance of proof that the forfeiture has been incurred.

The forfeiture in this case was to arise if the insured died by his own hand. Some stress is laid on the term "suicide," as if it means a wrongful act or self-murder. It has no such restricted meaning. It means self-killing, just as "homicide" means killing any one else. But there may be excusable homicide as well as felonious, and suicide was only cognizable at law when the person was *felo de se*, or guilty of a felonious act. If *non compos mentis*, the actor in homicide or suicide commits no crime. In one sense the man dies by his own hands who kills himself, whether sound or frenzied. But the condition in this policy cannot be construed to cause a forfeiture for acts involving no evil will. The clause punishing the insured for self-slaughter is a penal clause in the strictest sense of the term, and embraces several other acts in the same penalty, all of

which involve voluntary wrong-doing. They are death by duelling, or by the hands of justice, or in the violation of the laws, or impairing health by vice or intemperance. When an act which is to cause forfeiture is classed among such wrongful conduct it is fairly to be inferred that it is regarded as *ejusdem generis,* and depending on the same reasons.

A construction which punishes a person who is not in fault is not to be favored, if it can be allowed at all. The very object of life insurance is to provide for death by disease or in the ordinary course of nature. Death by his own hands, in the case of one *non compos,* is as much the result of disease as death by fever or consumption. The act of an insane man is morally no more his act than if it were mechanical.

We do not think it profitable to discuss the subject at large. The authorities differ somewhat, but we do not think there is any such preponderance of good sense in those decisions which treat an insane person like one in his senses, that we care to follow them.

A finding of suicide, without a further finding that it was voluntary, would not conflict with the general verdict, and would be immaterial.

There is no error in the judgment, and it must be affirmed, with costs.

The other Justices concurred.