### BENJAMIN M. ROYAL *vs.* CYRUS CHANDLER.

### Androscoggin.    Opinion December 24, 1888.

*Real Action.    Evidence.    Non-rebutting Testimony.*

In the trial of a writ of entry involving the dividing line between adjoining lands, a witness in behalf of the defendant having testified that the witness's father, the plaintiff's predecessor in title, pointed out to the witness a certain line (claimed by the defendant) as the true line; *Held*, that evidence was inadmissible in the plaintiff's behalf, for the purpose of contradicting the witness that he subsequently pointed out another line (claimed by plaintiff) to be the true one, as it did not tend to contradict the witness's testimony.

ON EXCEPTIONS.    Writ of entry to determine the location of the dividing line between the parties.    The verdict was for plaintiff.    The defendant excepted to testimony offered by plaintiff in rebuttal, and admitted as tending to contradict and impeach a witness of the defendant.

The grounds of the exception appear in the opinion of the court.    There were other exceptions upon which the court commented.

*N. and J. A. Morrill*, for defendant.

The testimony of plaintiff's witness, Merrow, relating to the declarations of Hicks, defendant's witness, for the purpose of supporting the line claimed by plaintiff, was in no particular contradictory.    The ruling admitted declarations of one in possession of land, not the disputed premises, in favor of his own title, which are always inadmissible.    *Morrill* v. *Titcomb*, 8 Allen, 100; *Osgood* v. *Coates*, 1 Allen, 77; *Blake* v. *Everett*, 1 Allen, 248; *Bartlett* v. *Emerson*, 7 Gray, 174, 176.

The point to be proved by our witness, Hicks, was the admissions of his father and Lane, made while in a condition the same as if parties to the present suit; they were of the same quality as if spoken by the plaintiff himself.    These could not be controlled or contradicted by the statements of the witness, subsequently made to third parties, not referring to his father and Lane.    In

the objected testimony he did not refer to his father's and Lane's admission of the Chandler line, but gave his own claim as to where the line of his land was, in his own favor. It has no tendency to disprove his testimony as to what his father and Lane said and did against their interest. It shows that his claim as to the boundary was very different from theirs. *Collins* v. *Stephenson*, 8 Gray, 438; *B. & W. R. R.* v. *Dana*, 1 Gray, 83, 90, 104; *Priest* v. *Groton*, 103 Mass. 530.

*R. Dresser*, for plaintiff, argued orally.

VIRGIN, J. Writ of entry to determine the dividing line between these parties' adjoining parcels of land which are parts of lot one in Auburn, the plaintiff's being in the west half and the defendant's in the east half of the lot.

In 1822, one Little, owning the entire lot, conveyed the east half to a certain grantee who subsequently sold off fifteen acres from the north side of the east half, and still later (in 1864) conveyed the remaining thirty-five acres to the defendant.

In 1860, the title of the west half of the lot passed from Little by several mesne conveyances to Winslow Hicks and R. C. Lane.

In 1870, the Tobie road was laid out lengthwise of the lot, entering its west line about forty-five rods north of its southwest corner, thence running diagonally to its southeast corner,—leaving, a triangular piece of land between the road and the south side of the lot.

In 1871, Hicks and Lane, then owning all of the west half, conveyed to the plaintiff so much of it as lay south of the road, bounding it on the east by the defendant's land, thus making the plaintiff's east line identical with the defendant's west line south of the road, which line is the one in controversy.

At the trial, Samuel Hicks, (son of the former proprietor, Winslow Hicks) called by the defendant, testified in substance that in 1860, while his father and Lane owned all of the west half, he (witness) cut wood on the west half north of the road for his father and Lane, by whose direction he stopped cutting at certain birch trees, which they then pointed out as the line and is now claimed as the line by the defendant. These acts and declar-

ations of Hicks senior and Lane were competent testimony on the well settled exception to the general rule excluding hearsay,— that the declarations of an owner of land, since deceased, made on the land concerning its limits while pointing out the bounds which defined the whole or a portion of it, are admissible. *Daggett* v. *Shaw*, 5 Met. 223, 228; *Ware* v. *Brookhouse*, 7 Gray, 454; *Bartlett* v. *Emerson*, 7 Gray, 174; *Flagg* v. *Mason*, 8 Gray, 556; *Long* v. *Colton*, 116 Mass. 414.

In rebuttal, the plaintiff called one Merrow, who, against the seasonable objection of the defendant, was allowed to testify in substance that, in 1880, when Winslow Hicks and Lane conveyed to one Foster and the witness's wife the remaining part of the west half north of the road, he (witness) had a conversation with Samuel Hicks, then heir and administrator of the estate of his father, concerning the defendant's west line; that Hicks subsequently showed to the witness a hemlock tree at the south line of lot one, it being on the line claimed by the plaintiff and east of the birch line claimed by the defendant. This testimony was admitted for the specific purpose of contradicting Samuel Hicks's testimony above mentioned.

It is common legal knowledge that if a witness testify to the existence of a fact material to the issue, the opposite party may show that the witness has, out of court, made a contradictory statement as to that fact, with a view to affect his credit. But to render the impeaching statement admissible, it must be a contradictory opposite of the witness's testimony in court; for if the two are reconcilable, one cannot be received to contradict the other, Whart. Ev. § 558. The fact testified to by Samuel Hicks consisted of a declaration uttered by his father and Lane that the line was at the birches designated; while the statement which Hicks made to Merrow out of court in 1880 was, not that his father and Lane made no such or any different declaration, but simply stated where he himself, twenty years after their declarations were made, judged the line to be. His testimony in court related to assertions made by former owners showing where they considered their line to be; his statement out of court simply referred to his own views long afterward. The fact in his tes-

timony is not the fact of his subsequent statement, hence his testimony and statement cannot be considered as conflicting.

Thus, (in a case on all fours with this) in an action for an injury caused by an alleged defective way, a witness for the town testified that, at the time and place of the accident, the lady who was driving, in response to the witness's question, said she did not know how it happened unless the horse was frightened or she pulled the wrong rein,—the court held that testimony, offered by the plaintiff that the witness himself later on the same day being asked how the accident happened, answered—the horse shied,—was not admissible for the purpose of contradicting his testimony as it had no such tendency. Ames, J., after remarking that the witness had testified as to the explanation that the woman had given to him at the time, and that by his statement subsequently made out of court he did not undertake to give the woman's account, but his own version or theory of the accident, added: "In his testimony on the stand, he gave her explanation of the accident and nothing more; and the supposed conflicting statement has no reference whatever to his conversation with her. For that reason there is no real discrepancy and the evidence given on behalf of the plaintiff contradicts nothing and was therefore inadmissible." *Priest* v. *Groton*, 103 Mass. 530, 542. See also *Emmons* v. *Westfield Bank*, 97 Mass. 230, 244.

It cannot be said that this error was immaterial and had no improper influence on the jury. Unless contradictory, Hicks's statements to Merrow were clearly inadmissible, for they were the declarations of a person still living, in relation to the boundary of land which he never owned or had any interest in. *Morrill* v. *Titcomb*, 8 Allen, 100, and cases, *supra*. Furthermore, Hicks's statement to Merrow that the hemlock tree was on the line, was to the ordinary mind strong testimony in favor of the plaintiff, because it was the opinion of one whose father had formerly owned the premises and with which he himself had been long acquainted. And the jury could hardly be expected to understand that his statement was not to be considered as evidence, that the hemlock was in fact on the line, but simply and solely as evidence tending to contradict his testimony and thereby

render it unworthy of belief. Moreover, with their inexperience the jury quite likely might be influenced by the consideration that if Hicks's testimony and statement were conflicting, the latter might contain the truth and they would find their verdict accordingly. We think therefore this exception must be sustained. And as this gives a new trial we need not pass upon the other exceptions, further than to remark that, it is not prudent for a plaintiff to endanger his verdict by urging doubtful evidence.

*Exceptions sustained.*

PETERS, C. J., WALTON, DANFORTH AND EMERY, JJ., concurred.