### WILLIAM MADDOX V. STATE OF NEBRASKA.

#### FILED JUNE 22, 1922.   No. 22573.

1. **Homicide:** EVIDENCE. In a prosecution for murder in the first degree, the evidence outlined in the opinion *held* sufficient to sustain a verdict for murder in the second degree.

2. **Criminal Law:** HOMICIDE: LIMITATION OF EVIDENCE. A defendant who pleads not guilty to the charge of murder in the first degree cannot limit the state's proofs to his defense of insanity or to the degree of the crime, though he says in his opening statement to the jury that he does not deny the committing of the homicide, evidence to prove beyond a reasonable doubt every element of the felony charged being admissible.

3. ——: ——: INSANITY: NONEXPERT TESTIMONY. Where accused in defense of a prosecution for murder testified to a temporary period of insanity resulting in the suspension of his mental faculties or in a lapse of memory before, during and following the homicidal act, a nonexpert witness who observed accused during that period and described his appearance, manner of speech and utterances, may state in rebuttal whether accused appeared to be rational or irrational, referring alone to what was so observed, heard and described.

4. ——: ——: EVIDENCE: WEAPONS. Where defendant pleads not guilty to the charge of murder, the shotgun and shell shown to have been used by him in committing the homicidal act are admissible in evidence.

5. ——: ——: ——: CONDUCT OF PROSECUTOR. In a prosecution for murder, the conduct of the prosecuting attorney in offering in evidence the hat knocked by the fatal shot from the head of the victim of the homicide, *held* not erroneous or prejudicial, the offer having been made in good faith and rejected.

Error to the district court for Thurston county: Guy T. Graves, Judge. *Affirmed.*

*Mark J. Ryan* and *R. J. Millard,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *Jackson B. Chase, contra.*

Heard before Morrissey, C. J., Rose, Aldrich and Flansburg, JJ., Redick, District Judge.

Rose, J.

In a prosecution by the state in the district court for Thurston county, William Maddox, defendant, was charged with murder in the first degree. He pleaded not guilty, and was convicted of murder in the second degree and for that felony was sentenced to the penitentiary for life. As plaintiff in error he presents for review the record of his conviction.

Defendant was a farm-hand 37 years of age. He shot and killed his employer, John G. Schnier, on the latter's farm in Thurston county, June 20, 1921, where he had been employed for three months. He had made his home with his employer. Schnier's family consisted of himself, Marie Schnier, his wife, and his son, a boy 8 years of age. Defendant occupied a room on the second floor of the family home. He went fishing Saturday afternoon June 18, 1921, and returned Sunday June 19, 1921. He arose Monday morning June 20, 1921, about 10 o'clock and declined breakfast. The same day Schnier left his work in a field and went home for his noon meal. Five guests had just arrived in an automobile. They were George Korn, Lena Korn, Lillie Krohn, Arnold Krohn, and Charles Kirchner, relatives of Marie Schnier. Between noon and 1 o'clock the Schnier family, the guests and defendant ate dinner together. Shortly thereafter Schnier went in his automobile to Pender, three and one-half miles, taking with him George Korn, Charles Kirchner and defendant. Within an hour, perhaps, Schnier returned to his home with the same passengers, and in addition James H.

Parker, a new farm-hand. Schnier and Parker went promptly to the barn, a short distance from the house across a lot, and began to harness a team of horses. Defendant went through the house to his room on the second floor, got his shotgun, came down stairs, tampered with the telephone on his way out, and went toward the barn. Marie Schnier ran half way across the lot between the house and barn, shouted to her husband to run, and warned him that defendant had his gun. Schnier ran out of the barn on the opposite side toward a grove of trees, and went into a little hollow, where the hat on his head was exposed to view. The direction he had taken was observed by defendant, who walked within range, took aim and fired. Schnier was found dead where he had fallen in the edge of a corn field near the grove of trees. After the shooting defendant, still carrying the shotgun, approached George Korn, who was standing near the automobile in which Schnier's guests had arrived, ordered Korn to start the motor, and got into the rear seat. Korn obeyed. With defendant giving directions, Korn drove to a farm house several miles away, where defendant had lived for a time while working on the surrounding farm. After brief conversations with his former employers, defendant, occupying the rear seat in the automobile, directed Korn to drive to West Point. On the way there defendant was arrested and disarmed.

That the homicide occurred in the manner outlined is not disputed. The defense is insanity or a lapse of memory during which defendant, according to his testimony, remembers nothing in connection with the homicidal act or with his attempt to escape.

Insufficiency of the evidence to sustain a conviction for murder in the second degree is urged as a ground of reversal. It is insisted that manslaughter is the highest degree of homicide of which defendant could have been found guilty under any view of the evidence. This position is untenable. The homicide was not the result of a sudden quarrel or the recent exchange of harsh words. Defendant's

term of employment ended June 18, 1921. He went fishing the next day, returned to the home of Schnier a day later and was a guest of the latter until the time of the tragedy, June 20, 1921. Defendant ate dinner with Schnier, his family, and his guests, and went with him in his automobile to Pender and back, not more than two hours before the shooting occurred. Previously there had been a controversy between them over wages. It is fairly inferable from the evidence that Schnier had not paid defendant what was due; that defendant had threatened "to take it out of his hide;" that defendant had appealed to the wife of Schnier to influence her husband to make payment, threatening trouble; that the wife told defendant her husband had been unable to raise money. Defendant, without receiving his wages, had been displaced by a new farmhand. He procured a deadly weapon and tampered with the telephone. He followed Schnier, who ran from danger. He took deliberate aim and shot and killed his employer. While armed, he immediately attempted flight in an automobile, directing the driver where to go. The evidence sustains the finding that he was not insane. The provocation of being displaced as a farm-hand without receiving his wages perhaps accounts for his escaping a conviction for murder in the first degree. There is no reason for doubt as to the sufficiency of the evidence to sustain the verdict.

Defendant criticises testimony relating to Schnier's son, to Schnier's wife, to the guests, and to the dinner party, insisting that the issues were sanity and the degree of crime, if any crime was committed. All of these persons were witnesses to some incident connected with the homicide Their names were indorsed on the information. They all testified and their relationship to or interest in Schnier were proper subjects of inquiry. Some of the testimony was given in response to preliminary inquiries about the incidents and circumstances leading up to the shooting. Other proofs supported the charge. The state of defendant's mind, as indicated by his conduct, appearance, and

Maddox v. State.

utterances at the dinner preceding the homicide, was a
proper subject of inquiry under the circumstances.  A de-
fendant who pleads not guilty to the charge of murder in
the first degree cannot limit the state's proofs to his de-
fense of insanity or to the degree of the crime, though he
says in his opening statement to the jury that he does not
deny the committing of the homicide, evidence to prove be-
yond a reasonable doubt every element of the felony
charged being admissible.  This assignment of error is
clearly without merit.

Another assignment of error is directed to the conduct
of the trial judge in interrupting the examination of a wit-
ness for the state to suggest:

"I think the witness could testify as to whether the de-
fendant appeared rational or irrational."

This was followed by testimony of the nature suggested
by the trial judge, to which objections are also interposed.
Though the defense was insanity, no expert testified as a
result of a personal examination that defendant was in-
sane or that his mind was affected by any particular form
of insanity.  In answer to a hypothetical question, how-
ever, one physician testified to the opinion that defendant
was insane at the time of the shooting and another that he
was then sane.  Defendant was a witness in his own behalf
and the nature of his testimony as to insanity is indicated
by the following summary:  He had a brother who was
insane.  He had worked in mines; had permanently suf-
fered from pneumonia; had symptoms of tuberculosis; had
stomach and bowel trouble; had poor health and constantly
took medicine; had distressing family troubles and brooded
over them.  He testified in effect that he had no recollec-
tion of any incident connnected with the homicide and
that his lapse of memory continued until he recovered his
mental faculties while in prison.  He did not testify to any
former lapse of memory or to any previous mental disturb-
ance which unbalanced his mind or suspended its natural
functions.  He did, however, testify to years of industry
requiring the use of his mental faculties.  Any insanity in-

ferable from the evidence was temporary, covering a period of a day or two at most. There was rebuttal testimony by witnesses who had seen defendant in the meantime. It was thus shown that defendant, while in flight, asked if Schnier was dead, and, when answered "yes," said he thought so. Other incidents, conversations and utterances tending to show that defendant was in possession of his mental faculties, while committing the homicidal act and attempting to escape, were narrated by witnesses for the state. It was on rebuttal in reference to specific incidents, or utterances or appearance, during which defendant, according to his testimony, was not in possession of his mental faculties, that the trial judge suggested: "I think the witness could testify as to whether the defendant appeared rational or irrational." The facts in connection with defendant's conduct, utterances and appearance had been observed and narrated by the nonexpert witness on the stand when that suggestion was made. Whether defendant, in connection with such facts, appeared to the witness to be rational or irrational was not necessarily a question for an expert. Appearance, conduct and manner of utterance were material and competent inquiries on rebuttal. Whether defendant, tested by appearance, conduct and utterances, appeared to be rational or irrational may be stated by a nonexpert witness who observed and narrated the facts. *People v. Wreden,* 59 Cal. 392; *People v. Conroy,* 97 N. Y. 62; *People v. Taylor,* 138 N. Y. 398. The rule of evidence suggested by the trial judge in the present case and the reasons for it have been stated as follows:

"When a layman is examined as to facts, within his own knowledge and observation, tending to show the soundness or unsoundness of the testator's mind, he may characterize, as rational or irrational, the acts and declarations to which he testifies. It is legitimate to give them such additional weight as may be derived from the conviction they produced at the time. The party calling him may require it, to fortify the force of the facts, and the adverse party may de-

mand it as a mode of probing the truth and good faith of the narration. But to render his opinion admissible, even to this extent, it must be limited to his conclusions from the specific facts he discloses. His position is that of an observer and not of a professional expert. He may testify to the impression produced by what he witnessed; but he is not legally competent to express an opinion on the general question, whether the mind of the testator was sound or unsound." *Clapp v. Fullerton,* 34 N. Y. 190.

The conduct of the trial court in suggesting this rule of evidence and the rulings admitting testimony under it do not seem to be erroneous or prejudicial to defendant.

One of the assignments is in this form:

"The court erred in permitting the witness, S. M. Young, to take the witness-stand, carrying a shotgun, in admitting the shotgun and shells in evidence, and in permitting the bloody hat of the deceased to be exhibited in the courtroom before the jury."

The burden was on the state to prove beyond a reasonable doubt every element of the felony charged. For that purpose the shotgun and shell used by defendant in committing the homicidal act were admissible in evidence. It is not shown that the witness Young was not a proper person to exhibit this evidence in court or that he made any unnecessary or objectionable display in doing so. The hat was not admitted and the record does not show it was bloody or that it was offered in bad faith. An eye-witness who saw the hat on Schnier's head said in effect that it was knocked off by the fatal shot while the person of the victim was almost concealed from view. There was no prejudice in the rejected offer.

The brief of defendant contains a number of criticisms relating to rulings on evidence or to isolated parts of the instructions. All of these rulings have been examined with a complete understanding of the record. They do not contain a prejudicial error. Defendant had an impartial trial. The issues were fairly submitted to the jury. The evidence sustains the conviction. The sentence is authorized by law

and there does not appear to be a sufficient ground for reducing it.

AFFIRMED.