PEOPLE *v.* NEATON.

1. BURGLARY—EVIDENCE.
Testimony in prosecution for breaking and entering a poolroom in the nighttime to commit a felony *held*, sufficient to warrant a verdict of guilty.

2. CRIMINAL LAW—ADMISSIONS—EVIDENCE.
In prosecution for breaking and entering a poolroom in the nighttime to commit a felony in which the information alleged such offense was a second offense, permission of the trial court to introduce testimony as to the commission of the first offense, admitted by defendant, was not error, for although such admitted fact need not be proved by the party benefiting by the admission, yet defendant by such admission could not shut out legal evidence.

3. EVIDENCE—ADMISSIONS.
A party can never be compelled to accept his adversary's admission in lieu of record evidence, unless he chooses.

4. CRIMINAL LAW—EVIDENCE OF FACTS SET FORTH IN INFORMATION—ADMISSIONS.
A prosecuting attorney is not precluded by any admissions made by the defendant or his attorney from introducing evidence in the regular way to establish all the material facts and circumstances set forth in the information.

Appeal from St. Clair; George (Fred W.), J. Submitted April 11, 1940. (Docket No. 113, Calendar No. 40,550.) Decided June 7, 1940.

Francis Neaton was convicted of breaking and entering in the nighttime with intent to commit the felony of larceny as a second offense. Affirmed.

*Octavio P. Guerra,* for appellant.

*Thomas Read,* Attorney General, *Duncan J. McColl, Jr.,* Prosecuting Attorney, and *Richard W.*

*Holt* and *Reg. S. Atkins,* Assistant Prosecuting Attorneys, for the people.

POTTER, J.    Defendant was arrested, tried, and convicted of breaking and entering a certain poolroom in the nighttime, then and there to commit a felony.    The offense charged was a second offense and it was so alleged in the information.    Defendant appeals, claiming there was no evidence, direct or circumstantial, connecting him with the commission of the crime; and that, where the defendant admitted the commission of the crime charged as a first offense, the trial court erred in permitting plaintiff to introduce testimony as to commission of the first offense on the ground it had the effect of prejudicing defendant.

Neaton was a janitor at the Michigan College of Beauty Culture and also at the Port Huron School of Beauty Culture and had a key to each.    The only other keys were kept by Jeanette McTevia who at that time was living in Marine City.

The complaining witness claimed that a yellow bowl pipe was stolen from the poolroom, and this was later found by Mrs. McTevia in a desk of the Port Huron school.    There was a dustpan with plaster in it found in the Michigan College of Beauty Culture to which Neaton had a key.    A knife with plaster on it, which had apparently been used to effect an entrance into the building, was found hidden in the Michigan College of Beauty Culture to which Neaton had a key.    At the Port Huron School of Beauty Culture was found $14 or $15 in bills and change on Sunday which was not there on Saturday night. Neaton had access to this.    Ten dimes were found in the Port Huron school Monday morning in an appointment book which were not there on Saturday

night. Neaton had access to this. There is testimony that Neaton early Sunday morning had $15 or $20 in halves, quarters and dimes, and that about 4:30 or 5 o'clock that morning he exchanged with one Joseph Thomas $10 in change for ten $1 bills.

Defendant had keys to both beauty culture schools. The person who did the breaking and entering must have had keys to both places because the knife and plaster were found in the Michigan College of Beauty Culture while the money and pipe were hidden in the Port Huron School of Beauty Culture.

James Lindsay, a police officer, testified:

"Neaton told me that he was janitor of the Michigan College of Beauty Culture and the Port Huron School of Beauty Culture and about 2 o'clock a.m. on March 20, 1938, he unlocked the front door of the Michigan College of Beauty Culture to go upstairs and looked up the stairway and saw two men crawling through a panel from the Majestic pool room to the stairway of the Michigan College of Beauty Culture and he hit them over the head with a beer bottle and took a pipe and some money from them."

On the other hand, Gertrude LaFave testified that about 2 o'clock in the morning she, with Shirley Terrett and Willard Berger, met Neaton in front of the Metropole hotel and that Neaton invited them up to his place, a beauty school on Grand River avenue, in Port Huron, where Neaton supplied the party with beer and sandwiches.

Willard C. Berger testified that he was a soldier at Selfridge field and saw Neaton coming out of a tavern about 2:30 o'clock Sunday morning, that Neaton had a sack full of beer and a bottle of wine at the time, and that he, Shirley Terrett and Mrs. LaFave went with Neaton to the beauty shop where they stayed until about the time of the arrest.

Defendant did not take the stand upon the trial. There was no direct proof that he saw the two men crawling through the panel from the Majestic poolroom to the stairway of the Michigan College of Beauty Culture and that he hit them over the head with a beer bottle and took a pipe and some money from them, but from the testimony of the other witnesses it is a fair inference that such transactions did not occur. We think there was testimony sufficient to warrant a verdict of guilty.

It is contended by defendant there was error on the part of the trial court in permitting the prosecuting attorney to introduce evidence to establish a prior offense when defendant's counsel admitted the effect of such proof. The question is presented as to whether or not a defendant, by making an admission as to the facts involved in an offense, may preclude the people from introducing evidence to establish such offense.

9 Wigmore on Evidence (3d Ed.), p. 589, § 2591, states the rule to be:

"A fact that is judicially admitted *needs* no evidence from the party benefiting by the admission.

"But his evidence, if he chooses to offer it, *may* even be *excluded;* first, because it is now as immaterial to the issues as though the pleadings had marked it out of the controversy; * * * next, because it may be superfluous and merely cumber the trial; * * * and furthermore, because the added dramatic force which might sometimes be gained from the examination of a witness to the fact (a force, indeed, which the admission is often designed especially to obviate) is not a thing which the party can be said to be always entitled to.

"Nevertheless, a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence;* furthermore, a judicial admission may be

cleverly made with grudging limitations or evasions or insinuations (especially in criminal cases), so as to be technically but not practically a waiver of proof. Hence, there should be no absolute rule on the subject; and the trial court's discretion should determine whether a particular admission is so plenary as to render the first party's evidence wholly needless under the circumstances.''

In this case, the admission of the defendant's attorney was as to the defendant having been formerly convicted.

In civil cases, the rule in Michigan is stated in the following cases:

In *John Hancock Mutual Life Ins. Co.* v. *Moore,* 34 Mich. 41, proof of the death of the deceased submitted to the company under the requirements of the policy was offered in evidence. It was said:

''The admission that such proofs had been furnished did not render it improper to produce the documentary evidence and thus prevent any subsequent disputes as to the meaning and extent of admissions.''

In *Kimball & Austin Manfg. Co.* v. *Vroman,* 35 Mich. 310, 321 (24 Am. Rep. 558), defendant's counsel having admitted the incorporation of the defendant company objected to the production of the articles of incorporation. The court said:

''This testimony was properly received, as it would be *absurd* to hold that any party by his bald admissions on a trial could shut out legal evidence.''

In *Baumier* v. *Antiau,* 79 Mich. 509, 511, defendant's counsel said:

''We will admit that Antiau did chase the plaintiffs off, that he did have a gun there, and that it was done with the advice of counsel. But there was no intention of hurting anybody, and that the plaintiffs

went there in March for the purpose of laying the foundation for this lawsuit."

Notwithstanding this admission, the court said:

"The testimony was admissible, both for the purpose of showing the effect of defendant's actions and threats upon the conduct of the plaintiffs in leaving the premises, and to rebut the above statement made by defendant's counsel in the presence of the jury."

In *Re Miller's Estate,* 160 Mich. 309, plaintiff's decedents were killed and she brought suit under the civil damage act. The defendant admitted the death of these men and claimed it was prejudicial error to describe the mutilated condition of the bodies to the jury. Counsel for defendant argued that the effect of the evidence complained of was *to inflame the passions of the jury* and that it was introduced for that purpose. The trial court charged the jury:

"This suit is only for actual damages, and not for anything else, not for mental suffering, shame, mortification, or anything else but actual money loss under the contract alleged in this declaration or claim of the plaintiff in this case."

The court held there was no error in introducing this testimony notwithstanding the admissions made by defendant.

In *Eesley Light & Power Co.* v. *Commonwealth Power Co.,* 172 Mich. 78, it was the claim of the appellant that, it having admitted the incorporation of defendant company and that it was lawfully doing business in the State, it was error to permit the reading of the articles of association of that company in evidence, and *that the effect was to prejudice the jury.* The court said:

"We cannot agree with this contention. The statute (3 Comp. Laws 1897, § 10169 [see 3 Comp.

Laws 1929, § 14173 (Stat. Ann. § 27.867)]) makes a duly certified copy of the articles admissible in evidence. The language of this court in *John Hancock Mutual Life Ins. Co.* v. *Moore,* 34 Mich. 41, is applicable here:

" 'A party can never be compelled to accept his adversary's admission in lieu of record evidence, unless he chooses.' "

And the court cited *Kimball & Austin Manfg. Co.* v. *Vroman, supra; Baumier* v. *Antiau, supra; In re Miller's Estate, supra.*

We are governed by the rule in Michigan. Mr. Justice CAMPBELL thought it *absurd* to hold that any party by his bald admissions on a trial could shut out legal evidence. The court has admitted evidence to prove a fact which has been admitted by the opposite party against the objection it tended "to inflame the passions of the jury," and refused to consider the presentation of evidence of a fact admitted to prejudice the jury. The question here is the right of the prosecuting attorney to introduce evidence of a former conviction where the fact of such conviction is admitted. This question was answered adversely to defendant's contention in the following cases:

In *Commonwealth* v. *Miller,* 3 Cush. (57 Mass.) 243, 251, the question came before Chief Justice Shaw, where the defendant sought to admit that certain notes were forged, but the court said:

"We think it very clear, that this admission did not supersede this evidence or render it incompetent. * * * Besides, it was competent for the prosecuting officer to prove and make out his case by proper and legal evidence, without being obliged to rely upon any admission of the defendant."

In *Priest* v. *Groton,* 103 Mass. 530, it was held in a negligence case that the plaintiff was not bound

to accept the concessions of the opposite party made during the trial.

In *Commonwealth* v. *McCarthy,* 119 Mass. 354, the question arose in an arson case and it was said:

"The government was not precluded from proving that the building was burnt with a wilful intent, because the defendant conceded that fact before the trial began, and stated that the only question he desired to submit to the jury was whether he set the fire."

In *Commonwealth* v. *Costello,* 120 Mass. 358, where defendant was indicted for forgery, it was said the defendant could not by admitting the forged name was fictitious prevent the government from introducing any legitimate evidence to establish it.

Substantially the same rule as to the effect of admissions upon the part of the defendant precluding the prosecuting attorney from introducing evidence to establish the facts set forth in the information has been declared in many other cases. *State* v. *Valsin,* 47 La. Ann. 115 (16 South. 768); *State* v. *Young,* 52 Ore. 227 (96 Pac. 1067, 18 L. R. A. [N. S.] 688, 132 Am. St. Rep. 689); *People* v. *Scheck,* 356 Ill. 56 (190 N. E. 108, 91 A. L. R. 1472); *McHenry* v. *United States,* 51 App. D. C. 119 (276 Fed. 761, 34 A. L. R. 1109); *Currie* v. *State,* 159 Ga. 775 (126 S. E. 835); *Shepherd* v. *State,* 51 Okla. Crim. 209 (300 Pac. 421); *People* v. *Parisi,* 190 Cal. 542 (213 Pac. 968); *State* v. *Hollowell,* 79 Mont. 343 (256 Pac. 380); *Maddox* v. *State,* 108 Neb. 809 (189 N. W. 398); *State* v. *Campbell,* 93 Conn. 3 (104 Atl. 653); *State* v. *Jones,* 89 Iowa, 182 (56 N. W. 427); *Trogdon* v. *State,* 133 Ind. 1 (32 N. E. 725); *People* v. *Sindici,* 54 Cal. App. 193 (201 Pac. 975); 91 A. L. R. p. 1478 (note). There are cases where a bare admission of the fact of conviction in a criminal case has been held sufficient with-

out the introduction of testimony to establish the facts. But these cases are an exception. *State* v. *Creighton,* 330 Mo. 1176 (52 S. W. [2d] 556) ; *State* v. *Seyboldt,* 65 Utah, 204 (236 Pac. 225) ; 91 A. L. R. p. 1478 (note). By the great weight of authority, the prosecuting attorney was not precluded from introducing evidence in the regular way to establish all the material facts and circumstances set forth in the information, and he is not precluded from so doing by any admissions made by defendant or his attorney.

Judgment affirmed.

Bushnell, C. J., and Sharpe, Chandler, North and McAllister, JJ., concurred with Potter, J.

Wiest, J. (*concurring*). I concur in the result.

The point that it was error to prove the prior conviction of defendant is moot. The record is as follows:

"*Q.* You are the county clerk of St. Clair county?

"*A.* Yes, sir.

"*Q.* And in your capacity as county clerk, have you care of the records and documents of the circuit court for the county of St. Clair?

"*A.* I have.

"*Q.* Have you in your custody criminal calendar No. 9?

"*A.* Yes, sir.

"*Q.* Directing your attention to page 321 of criminal calendar No. 9, will you read to the members of the jury the entries therein?

"*Mr. Guerra:* Read the date, et cetera.

"*A.* October 17, 1932—

"*Mr. Guerra:* Just a minute, if this is a record to this former conviction, we have admitted that and unless Mr. Vincent is brought to impress the jury, I think that is a—

"*The Court:* Well, the people may proceed, it is a part of the information.

"*Mr. Guerra:* Well, go ahead.

"*A*. The People of the State of Michigan v. Francis Neaton, charge of breaking and entering in the nighttime, October 17, 1932. Justice return of examination filed, same date information filed, same date arraigned and plead guilty. November 1st, released on probation for a period of one year, under conditions named in page 508. Circuit Court Journal 23, November 9, 1933, probation terminated. Defendant released.

"*Mr. Benedict* (assistant prosecuting attorney): We ask, your honor, for the admission of the entries in Calendar No. 9.

"*Mr. Guerra:* I have no objection.

"*The Court:* Of course it must be followed by the identification of the man with the record.

"*Mr. Benedict:* Yes, we'll follow with the identification.

"*Mr. Guerra:* We admit that this is the man."

Butzel, J., concurred with Wiest, J.