JOHN R. BRADSTREET *vs.* FRANK W. WINTER.

Waldo.    Opinion March 22, 1920.

*Writ of entry.   Adverse possession.   Title not acquired by adverse possession under a
mistaken idea as to true boundaries.   Survey.   Lot lines.   Disseizin.   Plan.*

On report.   This is a real action to recover possession of a certain parcel of land
situate in the town of Palermo.

On motion, the plaintiff filed an informal statement of his title and its origin,
setting out that he acquired title by a warranty deed from Jesse C. Bradstreet,
which deed is dated May 19, 1882, and that ever since that date he has had
open, adverse, continuous, notorious and exclusive possession of the premises
described in said suit under claim of right.

*Held:*

1.   It is familiar law that the plaintiff is bound to recover upon the strength of
his own title.   He has the burden of proving the seizin upon which he counts.

2.   One who by mistake occupies for twenty years or more land not covered by
his deed, with no intention to claim title beyond his actual boundary, wherever
that may be, does not thereby acquire title by adverse possession to land
beyond the true line.

3.   It is firmly established in this State that the survey must govern when its
location can be shown, that when land is conveyed by lot, without further
descriptions, that the lot lines determine the boundaries of that lot when they
can be located.

4.   If the owner of a parcel of land, through inadvertance or ignorance of the
dividing line, includes a part of an adjoining tract within his enclosure, this
does not operate as a disseizin.

5.   When a grant or deed of conveyance of land contains an express reference to
a certain plan, such plan, in legal construction, becomes a part of the deed, and
is subject to no other explanations by extraneous evidence than if all the
particulars of the description had been actually inserted in the body of the
grant or deed.

The testimony of the plaintiff fails to establish title by adverse possession.

On report.   Judgment for defendant.   Real action wherein plain-
tiff demanded a certain parcel of land in the town of Palermo.   Plea,
the general issue, with a brief statement disclaiming title to a part of
land described in the writ, and claiming title to the remainder.   At

the conclusion of the evidence introduced by plaintiff, the case was reported to the Law Court to render "such judgment as the rights of the parties require, upon so much of the evidence as is legally admissible."

The case is stated in the opinion.

*Carroll N. Perkins, and F. W. Clair,* for plaintiff.

*Dunton & Morse, and H. C. Buzzell,* for defendant.

SITTING: SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

HANSON, J.  On report.  This is a real action to recover possession of a certain parcel of land situate in the town of Palermo, described as follows:—"Beginning at a stake and stones in the westerly line of lot No. 102 as delineated on plan of Palermo by Bradstreet Wiggin; thence north 24° 55' west, one thousand eight hundred and thirty-one feet to a stone monument set in the ground; thence south 38° 15' east, one thousand thirty-eight feet to a stone monument set in the ground; thence south 27° 27' west three hundred fifty-one feet to the westerly shore of Mud Pond, so-called; thence along the westerly shore of said Mud Pond to its southerly end; thence in a straight line about five hundred twenty feet to the point of beginning."

On motion, the plaintiff filed an informal statement of his title and its origin, setting out that he acquired title by a warranty deed from Jesse C. Bradstreet, which deed is dated May 19, 1882, and that ever since that date he has had open, adverse, continuous, notorious and exclusive possession of the premises described in said suit under claim of right.

The defendant filed a disclaimer to a certain portion of the land described in the plaintiff's writ, and claims title to, and says he was in possession of, only that part of the same which is bounded and described as follows:   "Beginning at a point in the westerly line of land described in plaintiff's writ six hundred feet northerly of the stake and stones at the southwest corner of said land; thence in a northerly direction along said westerly line, twelve hundred and thirty-one feet to stone monument set in the ground; thence south 38° 15' east ten hundred thirty-eight feet to a stone monument set in the ground; thence south 27° 27' west three hundred fifty-one feet to shore of Mud Pond; thence along the shore of said pond in a westerly direction to a point intersected by a straight line running from the point of

beginning at right angles with the westerly line of land described in said writ; thence in a westerly direction along said line to the point begun at; and that he was not on the day of the date of Plaintiff's writ, and is not now tenant of the freehold, and was not then and is not now in possession of the residue of the land described in plaintiff's writ, and he disclaims all right, title or interest therein."

The plaintiff in the progress of the case introduced the deeds comprising defendant's chain of title as well as his own. The Wiggin plan referred to in the declaration was not produced at the trial. It is to be gathered from the deeds and grants in the case that prior to the year 1804 there was much confusion, and some dissatisfaction as to the titles near the Sheepscot Great Pond; and steps were taken to adjust the same. The Proprietors of the Kennebec Purchase deeded to Eben Hale Bradstreet, who occupied one of the lots, a lot of land described and bounded as follows, to wit: Southerly by the Great Pond, so-called, thence running northerly and entering the width of the lot as by the plan so as to contain one hundred acres, it being lot No. 102 on plan No. 10, situate in Sheepscot Pond Settlement, so-called, as by plans and description signed by Isaac Pillsbury, surveyor in the office of the Secretary of the Commonwealth. The deed was dated June 5, 1804.

Under this title the predecessors of the plaintiff occupied the "home place" on lot 102 until 1882, when the plaintiff came into possession and ownership by deed from his father, Jesse C. Bradstreet. Prior to 1882, the plaintiff says his father cut a few hoop-poles on the locus, and on that occasion Stephen Chadwick, defendant's predecessor, "came down here and followed us up here, or came up the same way we did, and we were cutting hoop-poles . . . and they got to pawing around this monument and they were talking about it . . . and father says 'this is our monument here.'"

"Q. And what did Mr. Chadwick say to your father?

A. I don't know. I don't know the whole of it. I don't know the whole. I went to work lugging out hoop-poles and he went on somewhere else." . . . .

"Q. And did you ever hear them have any conversation about the west line after that?

A. I don't know as I ever did."

The plaintiff's home lot, so-called, was first known as lot 102 of Sheepscot Great Pond Settlement, as delineated upon Plan No. 10,

dated November 30, 1802, and signed by John Pillsbury, Surveyor, and in the case. The actual location of the northerly bound of that lot is the subject of inquiry here, and as counsel for the plaintiff observed in their brief, "wherever the northerly bound of lot No. 102 was one hundred years ago, it must, so far as appears in this case, be to-day."

The plaintiff claims that the southerly line of lot No. 19 is the northerly line of lot No. 102, while the defendant contends that the southerly line of lot No. 19 is the northerly line of lot No. 24, title to which he derived from John M. Brawn, grantee of Margaret Chadwick, widow of Stephen Chadwick, who owned lot No. 24, which defendant says bounded lot 102 on the north.

We have attempted to produce a plan, as above, from the evidence, and with the aid of a copy of an ancient plan from the records of the Commonwealth of Massachusetts. The plan offered shows only lots 102, 103, 10, 11, 99, 100 and 101. The lots running northerly from Great Pond, appearing on the plan, do not have a north boundary, nor does the plan show the locus, or Mud Pond. These details, including the south boundary of lot 19, have been supplied by the court surveyor. The plaintiff in his declaration refers to a plan of Palermo by Bradstreet Wiggin, surveyor, but the plan was not used at the trial. A plan of the town in plaintiff's possession was offered by the defendant, but on plaintiff's objection was not permitted to be used. From the plans before us, however, enough is shown for an intelligent understanding of the case.

The plaintiff in his statement of title sets up two claims,—one under a deed, the other, ownership by adverse possession. As to the claim by deed. In the order of the several conveyances, the title came to plaintiff's predecessors as follows: Proprietors of Kennebec Purchase to Eben Hale Bradstreet, conveying a lot of land bounded and described as follows: Southerly by the Great Pond, so called; thence running northerly and entering the width of the lot as by the plan so as to contain one hundred acres, it being lot number one hundred and two on Plan No. ten situate in Sheepscot Pond Settlement, so called, as by the plans and description signed by Isaac Pillsbury, surveyor in the office of the secretary of the Commonwealth. This deed was dated June 5th, 1804. On July 18, 1836, Eben H. Bradstreet conveyed the same lot, as containing one hundred acres "more or less," and likewise one undivided half of lot No. 4, to Hale Bradstreet. June 25, 1846, Hale Bradstreet conveyed the same and other lots to Jesse C. Bradstreet, and on May 19, 1882, Jesse C. Bradstreet conveyed the same to the plaintiff, referring to the first lot as containing one hundred acres "more or less," and using for the first time the following as part of the description,—"on the north by land in part by land formerly owned by the late Stephen Chadwick."

The foregoing completes the plaintiff's chain, and it is manifest that he cannot sustain his claim under deeds because his predecessor bought one hundred acres according to a plan then in existence, and the deed conveys one hundred acres, no more, no less. The side lines were fixed, the length of the lot only was to be determined, and now upon the sketch in the case the northerly bound of the lot is marked

with a dotted line, and it will be observed that it is many rods south of the south line of the locus. The plaintiff had no deed of the locus, nor did his predecessor in title have title, either by deed or prescription.

As to adverse possession. The plaintiff has the burden of showing title by his own acts. He begins his statement by saying that at ten years of age he aided his father at cutting hoop-poles on the locus at a time when Stephen Chadwick, the owner of lot No. 24, "followed them up" and had a conversation with his father about a corner, and while he could not recall anything that Mr. Chadwick said, he did recall that his father said "this is our monument here," and that "the men went away together toward Mud Pond."

Since 1882, the plaintiff testifies to cutting a few hoop-poles and cord-wood and some logs from the lot, and no doubt did cut, but never with the knowledge of the defendant or his predecessor. He states that Mr. Brawn paid him for cord-wood stumpage from the lot, which is no doubt true, but the evidence shows conclusively, and it is evidence from plaintiff's witnesses, that such cutting as Brawn made by consent of the plaintiff, was on the lot disclaimed, and which so far as the case shows has been used by the plaintiff for more than twenty years,—for near the point in question, the point where the plaintiff's son testified to Brawn's cutting cord-wood, and admitting he might be over the line, the plaintiff and John M. Brawn, the predecessor in title of defendant, jointly maintained a pasture fence for years; and that fence extended from the west line of lot 102 to Mud Pond.

The plaintiff offered in evidence a mortgage dated Dec. 20th, 1859, from Stephen Chadwick to Jesse C. Bradstreet, hereinafter referred to.

March 31, 1824, Lott Chadwick deeded to Stephen Chadwick Lot 24, according to a plan by Bradstreet Wiggin, surveyor. November 30, 1865, Samuel Norton, administrator of the estate of Stephen Chadwick, conveyed to Margaret Chadwick, widow of Stephen Chadwick, the same with other lots. April 13, 1869, Margaret Chadwick conveyed the same to John M. Brawn, and on October 30, 1912, John M. Brawn conveyed one hundred acres, more or less, to the defendant. This deed included the locus. But the plaintiff says that the description in the mortgage from Chadwick to Bradstreet includes lot No. 24 and recognizes that it does not extend beyond the line which the plaintiff claims as his westerly line. The description

says, "On the east by Jesse C. Bradstreet's westerly line of his home lot," and this is the only easterly bound in the mortgage, except after running westerly and northerly, he runs his line easterly on land of Linscott to Bear Pond. "Thence, southerly on said Linscott's land to the first mentioned bound;" and offers the mortgage if admissible. The mortgage is admissible and proper to be considered with all the other testimony in the case upon the question at issue, the true location of the north line of lot 102. 16 Cyc., 945. As to part of the description being inconsistent with the defendant's position, we think the evidence clearly shows it is not, for a careful examination of the testimony shows that for several rods lot 24 is bounded on the east by Jesse C. Bradstreet's westerly line, and with that as the first bound, it leaves the easterly boundary undescribed until the last course, as stated by counsel. This was in the year 1859, when Stephen Chadwick gave that mortgage to plaintiff's immediate predecessor. Twenty-three years later, on May 19, 1882, Jesse C. Bradstreet conveyed the Bradstreet homestead property, which was lot 102, to the plaintiff, and he accepted the deed containing the exact language of the deed from proprietors of Sheepscot Great Pond Settlement, and adding the northerly boundary which that deed left undetermined, as follows, "on the north by land in part by land formerly owned by the late Stephen Chadwick, deceased."

It is familiar law that the plaintiff is bound to recover upon the strength of his own title. He has the burden of proving the seizin upon which he counts. *Bussey* v. *Grant*, 20 Maine, 284; *Brown, Jr.* v. *Webber*, 103 Maine, 60. His first entry upon the locus after he acquired title to lot 102, was in 1902 or later. The testimony of his witnesses relates to the same time or later. There is no evidence in the case that the plaintiff, or his predecessors, ever intended to claim beyond the true line. One who by mistake occupies for twenty years or more land not covered by his deed, with no intention to claim title beyond his actual boundary, wherever that may be, does not thereby acquire title by adverse possession to land beyond the true line. *Brown* v. *Gay*, 3 Maine, 126; *Preble* v. *Railroad Co.*, 85 Maine, 260. In *Ilsley et al.* v. *Kelley*, 113 Maine, 497, this court held, that "it is firmly established in this State that the survey must govern when its location can be shown, that when land is conveyed by lot, without further descriptions, that the lot lines determine the boundaries of that lot when they can be located;" and also that "if the owner of a

parcel of land, through inadvertance or ignorance of the dividing line, includes a part of an adjoining tract within his enclosure, this does not operate as a disseizin." When a grant or deed of conveyance of land contains an express reference to a certain plan, such plan, in legal construction, becomes a part of the deed, and is subject to no other explanations by extraneous evidence than if all the particulars of the description had been actually inserted in the body of the grant or deed. The proprietors of the *Kennebec Purchase* v. *Tiffany*, 1 Maine, 219; *McElwee* v. *Mahlman*, 117 Maine, 406.

The testimony of the plaintiff fails to establish title by adverse possession.

*Judgment for the defendant.*