EUGENE N. BRADSTREET, ET AL.
*vs.*
ESTELLE M. BRADSTREET

Kennebec.    Opinion, April 27, 1962.

*Frank E. Southard,*
*Lewis I. Naiman,* for plaintiff.

*Richard B. Sanborn,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J.   On appeal.   The plaintiffs, by so-called summary proceedings, brought an action to quiet title to certain property located on the northerly side of North Belfast Avenue in Augusta.   The defendant filed a counterclaim alleging trespass upon the disputed area and sought a de-

cree establishing her title thereto. For convenience, unless otherwise designated, Eugene N. Bradstreet, Beatrice A. Bradstreet and Joseph A. Bradstreet will hereafter be referred to as plaintiffs, and Estelle M. Bradstreet as defendant, in matters affecting either the original complaint or the counterclaim. The plaintiffs, Eugene N. Bradstreet and Beatrice A. Bradstreet, are the owners of certain property located on the northerly side of said North Belfast Avenue. This property was conveyed to them by deed with covenants of warranty by the plaintiff, Joseph A. Bradstreet, and lies adjacent to and easterly of property of the defendant. In the hearing below the plaintiffs contended that the dividing line between the properties was 31.8' westerly of two iron pipes driven into the ground by one John L. Collins, engineer and witness for the defendant. The defendant claimed that the division line between the properties is that shown on a plan made by said John L. Collins, identified as defendant's Exhibit #1, and is 31.8' easterly of the line claimed by the said plaintiffs to be the division line. The case was heard by the court without a jury. The court found for the defendant Estelle M. Bradstreet in both the original complaint and in the counterclaim. The plaintiffs appealed.

On July 23, 1948, the defendant conveyed to her son, Joseph A. Bradstreet, one of the plaintiffs, a parcel of land 147 feet square on the northerly side of North Belfast Avenue in Augusta. The property conveyed by this deed was a part of a larger tract then owned by the defendant. The location upon the face of the earth of the westerly line of the property conveyed is in dispute in the instant case. The property as described in the deed started at the southwest corner thereof. We quote from the deed as follows: "Beginning at a stake or bound on the northerly side of Bolton Hill on North Belfast Avenue, in said Augusta, at the southwest corner of the intersection of the right of way over the premises hereinafter conveyed . . ."

The factual issue in the trial below was the location, at the time of this conveyance, of the intersection of the northerly line of North Belfast Avenue and the westerly line of the right of way. No stake existed at that time at the starting point of the property described, and none was ever installed jointly by the parties. No bound mentioned in the deed was marked by an existing monument, and stakes referred to in the deed as marking the other corners of the property conveyed were never installed jointly by the parties. A right of way, leading to land to the north was then in existence. The right of way, wherever located at the time of the conveyance, was covered with fill at the time of the hearing. The defendant contended that the right of way, as it existed in 1948, was in the same location as a way in use at the time the proceedings were instituted. The plaintiffs claim that in 1948 the right of way was 31.8' westerly or downhill from such right of way.

By deed dated December 19, 1955, the plaintiff Joseph A. Bradstreet conveyed to the State of Maine a strip of land 12 feet in width along the front of this property adjacent to the northerly side of the highway. The conveyance recites that the property conveyed was "parcel 53 as shown on a Right of Way map, State Highway '210' Augusta, Federal Aid Secondary Project S-0210 (6) dated January 1955, on file in the office of the State Highway Commission (S.H.C. File No. 6-71) and to be recorded in the Registry of Deeds of Kennebec County." The starting point of the property described in this deed began in the easterly line of land of the defendant at a point fifty (50) feet northerly from and as measured along a line at right angles to the base line shown on said map at about Station 166+43, and the first course ran S77° 17' E about one hundred forty-seven (147) feet to a point in the westerly line of other land of the defendant fifty feet northerly from and as measured along a line at right angles to the base line at about Station 167+90. The property line then ran southerly about 12 feet to a point

in the northerly line of State Highway 210; thence westerly along the northerly line of the highway 147 feet to the southeasterly corner of the land of defendant; thence northerly along the easterly line of said defendant's property about 12 feet to the point of beginning. The deed recited that the property was a portion of the premises conveyed to Joseph A. Bradstreet by Estelle M. Bradstreet (the defendant) by deed dated July 23, 1948.

In 1959, the plaintiff Joseph Bradstreet conveyed the premises to the other two plaintiffs, using the identical description contained in his own deed, with a minor variation immaterial to the issues in the case, and then excepting the land conveyed by him to the state.

In the course of the hearing below there was admitted in evidence and marked for identification as defendant's Exhibit #1, a plot plan of the plaintiffs' lot made on July 27, 1960, by John L. Collins, engineer, who testified as a witness for the defendant. The defendant offered in evidence and identified as defendant's Exhibit #5 a plan marked in the identical language as the plan referred to in the deed from Joseph A. Bradstreet to the State of Maine. John L. Collins, defendant's witness, identified defendant's Exhibit #5 as a copy of the plan referred to in deed of the defendant Joseph A. Bradstreet to the State of Maine. Plaintiffs' counsel stated that he did not question that the plan was the plan referred to in that deed. He also stated that he had no objection to the admission of the plan so far as it depicted station numbers, but did object so far as it tended to show property lines. The court admitted the plan "for the purpose of identification as referred to in the chain of title, and the station numbers shown on the plan."

Defendant's Exhibits #1 and #5 were drawn to scale. Among other points indicated on defendant's Exhibit #1, the exhibit shows the location of Stations 165+50, 166, 167, and 168. This exhibit also shows the location of a monu-

ment on the northerly side line of North Belfast Avenue as the line existed after the taking of 12 feet by the state, this monument being located 50 feet northerly from Station 165+50 and 93 feet westerly of the starting point in the deed from the plaintiff Joseph A. Bradstreet to the state. The location of this monument as well as the stations mentioned are shown on defendant's Exhibit #5.

The property conveyed by the plaintiff Joseph A. Bradstreet to the state was clearly defined on defendant's Exhibit #5. It seems unnecessary to make any extended comment on the testimony relating to defendant's Exhibits #1 and #5. The engineer who prepared Exhibit #1 started his survey at the southwest corner of the intersection of a right of way, then well defined, with the main highway as it existed prior to the taking of 12 feet of land of the plaintiff Joseph A. Bradstreet. He then went around the property in accordance with the calls in the deed. Upon the completion of his survey, he placed irons at all corners of the land surveyed after reducing the side lines of the property 12 feet because of the sale of that area by Joseph A. Bradstreet to the state. He determined the location of the original northerly side line of North Belfast Avenue from defendant's Exhibit #5, and checked the starting point of his survey with measurements and a monument shown on that exhibit, from which the location of the property taken by the state and conveyed to it by the plaintiff Joseph A. Bradstreet could be determined. The evidence clearly shows that the strip of land 12 feet in width, conveyed to the state by the plaintiff Joseph A. Bradstreet, lies adjacent to and southerly of, for its entire width, the property shown on the plan prepared by the engineer Collins (defendant's Exhibit #1) and marked with irons at each corner.

The testimony relating to the location of the right of way in 1948 marking the division line between the properties was conflicting indeed. Some of the conflicting evidence

pertains to the location of a certain spring with relation to the southwest corner of the land in dispute. The plaintiffs in their complaint place that corner sixty feet more or less northwesterly of this spring. The engineer placed that corner about 25 feet northwesterly of the spring.

The plaintiffs contend that the court erred in ruling that it "cannot say, after hearing the testimony, that it has a clear conviction that either contention carries greater weight, based on the oral testimony of the so-called disinterested witnesses." This statement did appear in the court's decree. This was not, however, the only reference made by the court to the testimony considered by him in the process of arriving at his final conclusion. He also stated without qualifying words that "the oral testimony in the case did not carry greater weight, one way or the other." He used similar language in other parts of his decree. It is obvious from the language of the entire decree that in making this ruling the court considered all oral testimony presented in the case.

Findings of fact by a court in actions tried without a jury, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. R 52 (a) M. R. C. P.

The court below saw and heard the testimony of the witnesses in this case. He was the sole judge of the credibility and weight of their testimony. We cannot say that his ruling that neither contention carried greater weight, based on the oral testimony, was clearly wrong.

The court ruled that the state's plan adopted by Joseph A. Bradstreet by his deed to the state, and, by inference, not questioned by the defendant at the time of taking, is the evidence which added sufficient weight to the defendant's position so that she had a preponderance of the testimony

in her favor; that from the plan it appeared that both Joseph A. Bradstreet and the defendant adopted a starting point in 1948 which at the time of hearing was represented by the southwest corner of the lot as shown on that plan. He also ruled that the locus of this starting point must be determined from the intention of the original grantor and grantee in 1948, and considering the stand-off in the oral testimony, that this plan furnished the clue from which this intention could be determined. He thereupon dismissed the plaintiffs' complaint and gave judgment for the defendant Estelle M. Bradstreet in the counterclaim filed by her.

The plaintiffs contend that the court erred in giving weight and probative value to the defendant's Exhibit #5 and in giving probative value to deed references subsequent to 1948. They also contend that the court erred in ruling that Exhibit #5 furnished a clue to the intention of the grantor and grantee in 1948 in fixing the locus of the starting point.

When a conveyance expressly refers to a plan, that plan becomes a part of the deed, with the same force and effect as if copied into the deed, and is subject to no other explanation by extraneous evidence than if all the particulars of the description had been actually inserted in the body of the deed. *Perkins* v. *Jacobs*, 124 Me. 347, 349, 129 A. 4; *Bradstreet* v. *Winter*, 119 Me. 30, 38, 109 A. 482. It is not necessary that the plan be recorded. *Danforth* v. *Bangor*, 85 Me. 423, 428, 27 A. 268.

Declarations of a former owner, made while the owner of property and against his interest, when they relate to the nature, character or extent of the declarant's possession, *or the identity of monuments or the location of boundaries called for in a deed,* are admissible against those claiming under the declarant. Such declarations may be made in a deed of conveyance. *Farnsworth* v. *Macreadie*, 115 Me. 507, 510; 99 A. 455.

The application of this rule is limited. Such declarations are not admissible to deny or disparage title in the broad sense. The rule only applies where the subject matter involved is subject to parol proof and does not apply to matters which can only be proved by written evidence. It is not competent to prove declarations made out of court by the predecessor in title of a party to an action in court, to the effect that a deed which appears to be sufficient in all respects, which is duly recorded and which a purchaser has been led to rely upon as one of the necessary links in its chain of title, from the fact of its being recorded, is not what it, and the record of it, purports to be. *Fall* v. *Fall*, 100 Me. 98, 60 A. 718.

For a further discussion of these principles see *Shaw, et al.* v. *McKenzie*, 131 Me. 248, 160 A. 911; *Phillips* v. *Laughlin*, 99 Me. 26, 58 A. 64; 20 Am. Jur. Evidence, p. 516, *et seq.*

The deed from Joseph A. Bradstreet to the state described the land conveyed and referred to a State Highway map, known in this case as defendant's Exhibit #5. The deed given later by Joseph A. Bradstreet to the other plaintiffs referred to this deed, and excepted from the terms of the conveyance the property conveyed therein. The deed to Joseph A. Bradstreet and the deed from him to the other plaintiffs had the same starting point. The stake or bound marking this starting point cannot be found, and the right of way also mentioned as the starting point has been filled in and its location is in dispute. Under these circumstances parol evidence relating to the location of this starting point is admissible. The plan became a part of the deed to the state and its use to determine the location on the face of the earth of the property conveyed to the state was proper. That determination disclosed that the westerly side line of that property, as described in the deed, was 31.8' easterly of the line now claimed by the plaintiffs to be the true line. Furthermore, according to the calls in the deed the south-

erly line of the property conveyed ran to the southeasterly corner of land of the defendant and the westerly line runs along the easterly line of land of the defendant. Under these circumstances the deed, considered in the light of the location of the property conveyed therein, constituted a declaration or admission against interest with reference to the location of monuments and boundaries in dispute, and was admissible for that purpose, not only against the plaintiff Joseph A. Bradstreet but also against the other plaintiffs who claim title under him by a subsequent conveyance. The declaration did not necessarily establish the true line, but was evidence to be considered with other evidence as bearing on the location of the disputed line. The weight, if any, to be given to the declaration or admission was for the court below. It could only be considered in the light of the purpose for which it was admissible. In the instant case the decree below clearly indicates that the court considered the plan as evidence that the grantor and grantee in the deed of July 23, 1948, adopted a starting point which is now the southwest corner of the lot shown on the state's plan. Furthermore, the court stated that the plan furnished the clue from which could be determined the intention of the grantor and grantee in the 1948 deed in regard to the locus of the starting point in that deed. The language used by the court in this respect is as follows:

"The State's plan, adopted by Joseph A. Bradstreet by his deed to the State, and, by inference, not questioned by Estelle M. Bradstreet at the time of the taking, both of which events preceeded the deed to the other two Plaintiffs, is the evidence which adds sufficient weight to the Defendant's position so that this Court feels she has a preponderance of the testimony in her favor. In other words, from the plan it would appear that both Joseph A. and Estelle M. Bradstreet adopted a starting point in 1948 which is today repre-

sented by the southwest corner of the lot as shown on the State's plan.

\* \* \* \* \*

In the mind of the fact-finder, the locus of this starting point must be determined from the intention of the original Grantor and Grantee in 1948 and, considering the stand-off in the oral testimony, this plan furnished the clue from which this intention can be determined."

The defendant, the grantor in the 1948 deed, was not a party to the deed to the state. There was no evidence that she had any knowledge that the deed had been given. Neither the deed nor the plan mentioned therein was admissible for the purpose of proving the intention of the defendant in regard to the starting point of the 1948 deed. Likewise, the deed and plan have no probative value in proving that the defendant in the 1948 deed adopted a starting point which is now the southwest corner of the lot shown on the state's plan. Thus, in his evaluation of the evidence in the case the court gave consideration and weight to the deed and plan for a purpose not authorized by their admission in evidence. The plaintiffs were prejudiced thereby. We are unable to determine from the decree what conclusion would have been reached by the court, either in the complaint or the counterclaim, had he considered the deed to the state and the plan as declarations or admissions against interest. We think it should be emphasized that it is not our view that the assignment of proper weight to the State's deed and plan would necessarily produce a different result. Viewed as what in effect amounted to an admission by Joseph A. Bradstreet that his westerly line is and at all material times has been located physically upon the earth in accordance with the defendant's contention, the State's deed and plan would in all probability tip the scales whenever the other evidence produced a standoff. We cannot ourselves reach this result since we are dealing

with the finding of an essential fact as to which the evidence is in dispute. The issue here is not what the "intention" of the parties was in 1948. That "intention" is clear. The factual issue is as to where the starting point clearly defined by the parties to the 1948 deed was physically located on the face of the earth, and as to this disputed fact the admission of Joseph A. Bradstreet might be most persuasive in the mind of any fact finder.

A further discussion of the point raised in the appeal is unnecessary.

The entry will be

*Appeal sustained.*