**Fred W. STARBIRD and Florence F. Starbird**

v.

**Frank W. JOHNSON and Rosalind M. Johnson.**

Supreme Judicial Court of Maine.

Aug. 9, 1974.

---

Edward F. Gaulin, Biddeford, for plaintiffs.

Frederick T. McGonagle, Gorham, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

This complaint seeks injunctive relief premised on the assumption that a part of the defendants' garage, their septic tank and the leaching field are on the plaintiffs' land. The Justice below ordered judgment for the defendants, from which the plaintiffs have appealed. We deny the appeal.

The defendants' house lot lies on the easterly side of a public highway and the plaintiffs' property surrounds it on the other sides. The garage, septic tank and leaching field are on the northerly side of the defendants' premises.

In ordering judgment for the defendants, the Justice below ruled that "the burden of proof resting upon the plaintiffs has not been sustained" because "the plaintiffs have failed to prove that a trespass has occurred in that the Court has before it insufficient evidence of the location of the northerly boundary of the defendants' property." Appellants urge that the ruling of the Justice below was clearly erroneous. Rule 52(a), M.R.C.P.

Defendants' property is described in this language:

"Beginning at an iron pipe driven in the ground on the line of said road, thence South 80½ degrees, East one hundred (100) feet to an iron pipe driven in the ground, thence South 9½ degrees, West Ninety eight (98) feet to an iron pipe, thence North 80½ degrees, one hundred (100) feet to said road, and an iron pipe driven in the ground, thence Northerly by said road to the pipe and

point begun at, containing 56 square rods more or less."[1]

■ The above description includes four iron pipes as monuments. The plaintiffs' surveyor, Max Davis, could find none of them, although the defendants' surveyor claimed to have located one "iron pipe" marking the northeasterly corner. Apparently proceeding on the theory that only in the absence of monuments can courses and distances be used to determine the locus of boundaries (Perkins v. Conary, 295 A.2d 644, 646 (Me.1972)), Mr. Davis, by assuming the existence of one monument at the southwesterly corner, prepared a plan which on its face would be in substantial compliance with the calls in defendants' deed. This plan does show that the defendants are utilizing 9′ 5″ of the plaintiffs' land and does depict the defendants' property lines as forming a parallelogram.[2]

Mr. Davis arbitrarily started his survey from a stone which he assumed was the southwest corner of defendants' lot and ran the perimeters from that point by reversing the courses called for in the deed. In explanation of this procedure Mr. Davis testified:

"Well I was taken to that *stone* by Mr. Starbird and there was a hedge, a little hedge and he said that was the stone that *Mrs. Strom told him* was the corner of her lot, and the other stones being laid down, we figured they were not reliable. There is nothing up here on the northerly side of the lot to start from, so we took this as the *most reliable corner* to start from." (Emphasis supplied.)

This testimony becomes significant in view of the defendants' chain of title. Originally, one Lucien L. Clark owned both properties of the plaintiffs and defendants. In 1917 Mr. Clark conveyed out what is now the defendants' property by a deed running to three ladies, Annie A., Georgia E., and Grace L. Strom. In 1951 the heirs of Lucien L. Clark conveyed what is now the plaintiffs' property to one Errol A. Hill who, in 1953, conveyed it to the plaintiffs, both of these deeds noting the prior conveyance to the Stroms. The defendants acquired their title in 1960 by a deed from Dora M. and Adolph H. Strom, and Lillian G. Day. This deed recited that the original grantees, Annie A. and Georgia E. Strom, were both deceased and that Lillian G. Day was formerly known as Grace L. Strom, but the deed is silent as to when their deaths occurred.

We now revert to Mr. Davis' testimony which we have quoted *infra*. We have no doubt that the Justice below viewed this evidence with the doctrine in mind that:

"Declarations of a former owner, made while the owner of property and against his interest, when they relate to the . . . *identity of monuments or the location of boundaries called for in a deed,* are admissible against those claiming under the declarant."

Bradstreet v. Bradstreet, 158 Me. 140, 146, 180 A.2d 459, 463 (1962).

■ Such testimony may be allowed as an exception to the general rule excluding hearsay evidence. Royal v. Chandler, 83 Me. 150, 21 A. 842 (1891); Royal v. Chandler, 81 Me. 118, 16 A. 410 (1888). A factual analysis of the cases enuciating this rule indicates that the declaration must be that of a deceased owner of the property, made during the period of such ownership, and made directly to the witness so testifying. In Bradstreet v. Bradstreet, *supra*,

---

1. A deed given in 1917 describes the contents of this lot as "*containing 36 square rods* more or less."

2. We give no weight to the plan prepared by the defendants' surveyor since the northerly and southerly lines are not shown as parallel. For example, the course of the northerly line is set at "S–53–E," vis a vis the bearing of "South 80½ degrees, East" as called for in the deed, while the southerly line is depicted as bearing "N–80–E." This plan conforms to neither the courses nor distances called for in the description. Thus, the "inadequacy" of this plan is obvious and the Justice below properly gave it no weight.

for example, such declaration was found in a deed executed by the former owner of the property involved. In both Royal v. Chandler cases, *supra*, a witness was able to testify as to declarations made to him by deceased owners of property. *See also* Carter v. Clark, 92 Me. 225, 42 A. 398 (1898).

■ On the record before us it is clear that *Mrs. Strom* made no declaration to Mr. Davis. If we *assume* that the *Mrs. Strom* referred to in Mr. Davis' testimony was one of the former owners of the defendants' property, and is now deceased, and if we further *assume* that she was an owner of this property at the time she pointed out the southwest corner of the lot, the testimony must still be characterized as hearsay because it comes not from the person to whom the declaration was made but from Mr. Davis who heard it only through the lips of Mr. Starbird. We consider this testimony to be consent evidence since it was admitted without objection.

Our Court announced the rule defining the probative value of such evidence in Goldthwaite v. Sheraton Restaurant, 154 Me. 214, 224, ·145 A.2d 362, 367–368 (1958) :

"[I]t may now be stated that such evidence may properly be considered and given its natural and logical probative effect. The factfinder must always, however, weigh such evidence with caution, mindful of its inherent weakness, the same weakness which leads to exclusion upon objection. It may properly be said that such evidence may properly be given weight as *corroborative* of other competent legal evidence, but will not *alone* support a verdict or finding."

*See* Shaw v. McKenzie, 131 Me. 248, 160 A. 911 (1932) ; *see also* Bradstreet v. Bradstreet, *supra*.

■ Since the plan prepared by Mr. Davis showing the locus of the disputed northerly boundary is premised on the starting point being a stone allegedly in the southwest corner of the defendants' property, and since this assumption is founded completely on hearsay evidence uncorroborated by any testimony elsewhere in the record, the Justice below correctly characterized the plan as "inadequate." If he had done otherwise and granted the plaintiffs the relief they requested, his judgment would necessarily be vulnerable since it would clearly violate the mandate of *Goldthwaite*.

■ Although the appellants have argued that the Justice below erroneously allowed the defendants to introduce parol evidence explanatory of the boundaries specified in their deed, the introduction of such evidence, assuming it to be inadmissible, becomes harmless in view of the fact that the Justice disregarded such evidence and likewise rejected as "inadequate" the defendants' plan showing these boundaries.

We are unable to find any basis for sustaining this appeal and the entry must be:

Appeal denied.

All Justices concurring.