STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
Docket No. RE-2000-52

FILED AND ENTERED
SUPERIOR COURT

NOV 0 8 2001

PENOBSCOT COUNTY

FRANKLIN WATTS and )
MILDRED WATTS, )
    Plaintiffs/Defendants )
    in Counterclaim )
    )
    )
v. )
    )
HOWARD WATTS and )
SANDRA WATTS, )
    Defendants/Plaintiffs )
    in Counterclaim )

**ORDER AND DECISION**

The matters before the Court are the defendants' and plaintiffs' motions for

summary judgment.[1] For the following reasons, the plaintiffs' motion is granted in part

and denied in part, and the defendants' motion is denied.

## BACKGROUND

By a non-recorded deed dated August 21, 1959, Roy L. Powers ("Powers")

granted a right of way to the Town of Medway, specifically "[t]he Right of Way through

the parcel of land as described in a Stadia Survey made by John M. Gavin in June 1956 . .

. ." This right of way is now referred to as Horseshoe Road. In March, 1966, the Town

of Medway accepted Horseshoe Road to be maintained as a town road.

In 1971, the plaintiffs acquired 39± acres in the Town of Medway from Powers.

Their quitclaim deed describes the conveyed property, then states:

> Excepting and reserving those lots situated on the northerly side of Rt. 157
> previously conveyed by Roy Powers most of which are shown on a plan by

---

[1] For the sake of brevity and clarity, the Court will refer to the plaintiffs/defendants in counterclaim as "the plaintiffs,' and the defendants/plaintiffs in counterclaim as "the defendants."

John Gavin dated June 1957.[2] Meaning and intending to convey 39 acres more or less which was a part of lot No. 1 and a part of the Mullen lot, so called, in the Town of Medway. This parcel of land being described by a plan made by Andrews and Lane, Inc. in December 1971 . . . .

The Andrews and Lane survey referred to in the deed includes Horseshoe Road in the land conveyed to Franklin Watts.

The defendants own land located to the south of the plaintiffs' land, known as "Lot 25." Lot 25 was in existence at the time of Powers's conveyance to the Town of Medway, and when Medway adopted Horseshoe Road as a public road. The defendants also own a parcel 20' x 105.76' that lies between the northern boundary of Lot 25 and the southern boundary of the plaintiffs' land.

Each party has, in one way or another, been occupying a strip of land approximately 25 feet wide and 117 feet long, abutting and including a portion of Horseshoe Road, claiming it as their own. On September 19, 2000, the plaintiffs brought this action for trespass, and are asking the Court to order the defendants to remove their fence from the parcel, order the defendants to cease and desist from using the premises, and award damages and attorneys' fees. The defendants countersued, alleging that they own the parcel pursuant to 33 M.R.S.A. section 465 (Counterclaim Count I), by adverse possession (Counterclaim Count II), and through the acquiescence of the plaintiffs (Counterclaim Count III). The defendants also allege that the plaintiffs have trespassed in violation of 14 M.R.S.A. sections 7551 and 7552 (Counterclaim Count IV). The defendants are asking the Court to declare that the defendants are the rightful owners of

---

[2]  Although the 1971 deed and the 1971 survey cites to a John Gavin survey dated June 1957, neither party submitted a 1957 survey. The parties did submit a John Gavin survey dated June 1956 entitled the "Stadia Survey." There is either a typing error in the 1971 deed and 1971 survey, or two different John Gavin surveys. The record is unclear, and neither party mentioned or addressed this discrepancy.

2

that portion of Horseshoe Road, and that the plaintiffs have no right or claim to that portion of Horseshoe Road. On February 13, 2001, the defendants moved for summary judgment, and on April 30, 2001, the plaintiffs moved for summary judgment.

## DISCUSSION

The Court should award summary judgment when there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56 (c). "A fact is material when it has the potential to affect the outcome of the suit." Kenny v. Dep't of Human Services, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (citation omitted). "An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial." Id. (citation omitted).

### A. Location of Boundaries

Both the defendants and the plaintiffs are moving for summary judgment on the trespass issue. Before the Court can even reach the trespass issue, however, it must determine where the defendants' and plaintiffs' property lines are located. "In boundary disputes, what the boundaries are is a question of law, but where boundaries are on the face of the earth is a question of fact." Dupont v. Randall, 648 A.2d 437, 438 (Me. 1994); Gammon v. Verrill, 600 A.2d 832, 833 (Me. 1991); Abbott v. Abbott, 51 Me. 575, 581 (1863).

In their motion, the defendants argue that they

are owners of real estate described as lot 25 . . . and a parcel of real estate 20 feet in width and 105.76 feet in depth abutting the generally northerly line of Lot 25, and are owners of the portion of the Horseshoe Road fronting along their property from their property to the center line of the Horseshoe Road.

3

The plaintiffs do not dispute that the defendants own Lot 25 and the small parcel abutting the northerly line of Lot 25. They do dispute the defendants' contention that they also own the parcel in dispute.

Neither party has submitted sufficient information for the Court to determine the location of the easterly boundary of Horseshoe Road or the westerly boundary of Lot 25. There are two determinate questions that the record fails to answer. First, Powers failed to provide an accurate description of the width of Horseshoe Road in the 1959 deed, 1971 deed, and 1971 survey. This leaves the precise location of the westerly line of Lot 25 and the easterly line of Horseshoe Road questions of fact that have the potential to affect the outcome of this suit.

Second, at the time the Town of Medway adopted Horseshoe Road as a public way, a common law presumption existed, under which owners of land abutting a public road owned to the center of the road in the absence of any words to the contrary. See Brooks v. Bess, 135 Me. 290, 291 (1937); Sunderland v. Jackson, 32 Me. 80, 82 (1850). Powers did not include any words to the contrary in his deed to the Town of Medway, but may have intended to keep title to Horseshoe Road because of its inclusion in the 1971 Andrews and Lane survey to which Powers specifically referred in the deed to the plaintiffs.

The record lacks ample information to answer either of these crucial questions. For that reason, both parties' motions for summary judgment on the trespass issue are denied. In addition, the plaintiffs' Motion for Summary Judgment is denied as to the defendants' Title 33 M.R.S.A. section 465 claim.

4

**B. Adverse Possession**

The defendants allege in Counterclaim Count II that they have title to the center of Horseshoe Road "by adverse possession having possessed and occupied [the] premises for more than 20 years, in an open, notorious, hostile, continuous and exclusive manner under a claim of right." "Title by adverse possession may be established either pursuant to the common law or statutory provisions." Striefel v. Charles-Keyt-Leaman, 1999 ME 111, ¶ 5, 733 A.2d 984, 989. The defendants did not claim title by adverse possession pursuant to statute.[3] The common law, therefore, applies.

Possession that is sufficient to convey title by adverse possession must be actual, open, visible, notorious, hostile, under claim of right, continuous, and exclusive for a period of at least twenty years. Id. ¶ 6; Glover v. Graham, 459 A.2d 1080, 1084 n.7 (Me. 1983). The burden is on the claimant to prove each of the elements of adverse possession by a fair preponderance of the evidence. Gonthier v. Horne, 576 A.2d 745, 746 (Me. 1990). Because the defendants have the burden of proving its allegation at trial, they must establish a prima facie case for each element of the cause of action in order to survive the plaintiffs' Motion for Summary Judgment.

In this case, the defendants have failed to assert any facts or arguments in support of their adverse possession claim. They have not, therefore, demonstrated a prima facie case, and the Court allows summary judgment for the plaintiffs on defendants' Counterclaim Count II.

---

[3] See 14 M.R.S.A. §§ 801 - 810-A.

5

## C. Acquiescence

Finally, the defendants claim that "by agreement [the plaintiffs] have acquiesced in and agreed to the location of the boundary line between the respective properties of the [plaintiffs] and [defendants]." In order to obtain title by acquiescence, a party must establish four elements by clear and convincing evidence: (1) possession up to visible line marked clearly by monuments, fences, or the like; (2) actual or constructive notice to adjoining landowner of the possession; (3) conduct by adjoining landowner from which recognition and acquiescence not induced by fraud or mistake may be fairly inferred; and (4) acquiescence for a long period of years such that policy behind doctrine of acquiescence is well served by recognizing the boundary. Dowley v. Morency, 1999 ME 137, ¶ 16, 737 A.2d 1061, 1067.

Similar to their adverse possession claim, the defendants have failed to assert sufficient facts to establish a prima facie case of acquiescence. Although it may be argued that the defendants, by submitting the Allan Gordon survey, have shown possession up to the center of Horseshoe Road, and that the plaintiffs knew of their possession of that parcel, the defendants have not asserted that the plaintiffs acquiesced for a long period of years. To the contrary, the submissions of the parties demonstrate that the plaintiffs and defendants quarreled over this parcel for a lengthy amount of time. The defendants have not established a prima facie case for their acquiescence counterclaim. The Court will, therefore, allow summary judgment for the plaintiffs as to the defendants' Counterclaim Count III.

The docket entry is:

The Motion for Summary Judgment of the plaintiffs/defendants in counterclaim is allowed as to defendants'/plaintiffs' in counterclaim Counterclaim Count II (adverse possession) and Counterclaim Count III (acquiescence). On Counts II and III of the Counterclaim, judgment is entered for the plaintiffs/defendants in counterclaim. The Motion for Summary Judgment of the plaintiffs/defendants in counterclaim is denied as to defendants'/plaintiffs' in counterclaim Counterclaim I (33 M.R.S.A. § 465) and Counterclaim Count IV (trespass in violation of 14 M.R.S.A. §§ 7551 and 7552).

The Motion for Summary Judgment of the defendants/plaintiffs in counterclaim is denied.

Jeffrey L. Hjelm
Justice, Superior Court

DATED: November 6, 2001

7

TITLE TO REAL ESTATE INVOLVED
Action __REAL ESTATE - TRESPASS__

COUNTERCLAIM (Judgment on 11/8/01)

JUSTICE JEFFREY L. HJELM
ASSIGNED

FRANKLIN L. WATTS and
MILDRED L. WATTS

HOWARD T. WATTS and
SANDRA J. WATTS

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| TANOUS AND SNOW<br>P O BOX 246 - 29 Main Street<br>EAST MILLINOCKET ME 04430-0246<br>BY: Wakine G. Tanous, Esq. | PAINE, LYNCH & HARRIS<br>P O BOX 1451 - 123 Center Street<br>BANGOR ME 04402-1451<br>BY: Martha J. Harris, Esq. |

| Date of Entry | |
|---|---|
| 9/19/00 | Removal from Millinocket District Court, Docket No. MIL-RE-00-13. The following papers were received and filed:<br>1. Complaint - Trespass Pursuant to Title 14 M.R.S.A. Section 7551-7561 (Exhibits 1 thru 8 attached)<br>2. Officer's Return of Service as to Sandra J. Watts (s.d. 8/28/00)<br>3. Officer's Return of Service as to Howard T. Watts (s.d. 8/28/00)<br>4. Notice of Removal by Defendants<br>5. Affirmative Defenses, Answer and Counterclaim<br>6. Attested copy of the Millinocket District Court Docket Entries<br>7. Miscellaneous correspondence |
| 9/20/00 | Notice of Removal form forwarded to attorneys of record. |
| 9/22/2000 | Scheduling Order Filed. Discovery Deadline is June 1, 2001. (Hjelm,J) copy forwarded to all attorneys of record. |
| 10/2/00 | Affirmative Defenses and Answer to Counterclaim filed by Plaintiffs. |
| 10/25/00 | Notification of Discovery Service filed by Plaintiffs, Request for Admissions, Interrogatories by Defendants. |
| 11/29/00 | Notification of Discovery Service filed by Plaintiffs, Answers to Requests for Admissions. |
| 12/1/2000 | Notification of Compliance with Discovery Service Filed by Plaintiffs; Plaintiff, Mildred L. Watts', Answers to Interrogatories; Plaintiff, Franklin L. Watts', Answers to Interrogatories. |
| 12/22/00 | Plaintiffs' Designation of Expert Witnesses and Rule 26(B)(4) Information filed. |

STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-00-52

CLH - PEN - 6/3/2002

Franklin L. Watts et al.,
        Plaintiffs

v.

Howard T. Watts et al.
        Defendants

Decision and Judgment

FILED & ENTERED
SUPERIOR COURT
JUN 03 2002
PENOBSCOT COUNTY

DONALD L. GARBRECHT
LAW LIBRARY

JUN 14 2002

Trial on the pending complaint and counterclaim was held on December 20, 2001, and January 9, 2002. On both hearing dates, all parties were present with counsel. Following the presentation of the evidence, the parties submitted written argument that the court has considered. At its core, this case raises questions of the ownership of a small piece of real property located in a residential area in Medway where the parties live.

The real estate now owned by the parties is derived from a common grantor, Roy Powers. In 1956, Powers created a subdivision in a portion of the property that he owned, by establishing a number of lots. One of those lots, lot number 25, is now owned by the defendants. Lot 25 is located adjacent to a sharp corner of the right-of-way that passes through the land that Powers subdivided and that provides access to the lots. A survey document ("the Stadia survey") depicts the location of those lots (including lot 25) and also shows the land that Powers did not subdivide. *See* plaintiffs' exhibit 6. A notation on plaintiffs' exhibit 6 indicates that the plan was recorded. The areas that were not part of the subdivision include the property now owned by the plaintiffs and the land where a road was located (or was to be located). That road is the Horseshoe Road. The Horseshoe Road is roughly 1000 feet long and connects at both ends to Route 157. In August 1959, Powers granted a right-of-way to the Town of Medway. *See* plaintiffs' exhibit 5. That right-of-way was over the roadway as indicated in the 1956 survey. The Town did not formally accept that grant until 1966. *See* defendants' exhibit 1.

1

By deed dated November 19, 1959, Powers conveyed lot 25 to one of the defendants' predecessor in interest. *See* plaintiffs' exhibit 8. This appears to be the first conveyance of the lot. The deed was recorded in the registry of deeds on August 2, 1971. The property description in the deed is simply, "Being lot numbered twenty five (25) as shown on Stadia Survey . . . . Being part of the same premises conveyed to Roy L. Powers by John W. Powers . . . ." The defendants ultimately acquired title to lot 25 in September 1977. *See* plaintiffs' exhibit 11.[1]

The plaintiffs' holdings include two parcels. Of the two, one is central to the issues in this case.[2] In December 1971 -- more than four months after the first deed to lot 25 was recorded -- , Powers conveyed a 39 acre parcel of land to the plaintiffs. *See* plaintiffs' exhibit 3. That parcel is not one of the lots that were created as part of the 1956 subdivision and is not affirmatively depicted in the Stadia survey. The deed of conveyance includes a metes and bounds description of the parcel and further notes that it excepts and reserves "those lots situated on the northern side of Rt. 157 previously conveyed by Roy Powers most of which are shown on a plan by John Gavin dated June 1957 [sic[3]] [the Stadia survey] . . . . This parcel of land being described in a plan made by Andrews & Lane, Inc. in December 1971 and recorded in Penobscot Registry of Deeds File No. 7." The Andrews & Lane plan, *see* plaintiffs' exhibit 4, shows the configuration of the 39 acre parcel by outlining the boundaries described in the deed and then by depicting, through several cross-hatched areas, the sections of land within the interior of those boundaries described in the deed, that had been conveyed previously to third-parties. Lot 25 appears to be included in one of the crosshatched sections.

---

[1] The plaintiffs also hold title to a twenty foot strip of land that runs along the northeasterly boundary of lot 25. *See* plaintiffs' exhibits 9-11. This small parcel does not abut the Horseshoe Road and has no direct bearing on the resolution of the parties' dispute at bar.

[2] The one of lesser significance is a parcel that Powers conveyed to the plaintiffs' predecessor in interest in 1956. *See* plaintiffs' exhibit 12. This parcel, on which the plaintiffs' house sits, is located adjacent to and northwesterly of the plaintiffs' parcel that is more important to this case.

[3] The reference should be to 1956 rather than to 1957. This discrepancy is attributable to a scrivener's error.

Lot 25, now owned by the defendants, and a portion of the 39 acre lot owned by the plaintiffs meet at an outside corner of the right-of-way associated with the Horseshoe Road. Both of those parcels in fact abut the Horseshoe Road.[4] Although the Town has a public easement or right-of-way to the Horseback Road and the area shown as the road in the Stadia survey, it did not acquire title to that land. Now, the parties contest ownership to the land that is located immediately adjacent to the northwest boundary of lot 25, as that boundary is described in the deeds for lot 25. The defendants claim legal title to an area extending to the middle of the right-of-way and running along the length of their northwest boundary. This argument rests on the legal presumption that the conveyance of a parcel that is bounded by a road includes a conveyance of the land under that way, up to its median. The plaintiffs contend that when Powers created and conveyed lot 25, he intended to reserve to himself the title to all of the property on which the right-of-way now exists. On this basis, they claim that they own the fee to the entire right-of-way, including the land under the Horseshoe Road itself, by virtue of the December 1971 conveyance from Powers. Relying on these conflicting positions, the parties seek a declaratory judgment to establish their rights regarding the disputed area. Additionally, each set of parties has filed a statutory trespass claim against the other based on the other parties' use of the disputed land and seeks damages, including attorney's fees.

### A. Parties' ownership interests

The determination of the parties' rights and interests regarding the disputed realty requires consideration of several statutory provisions and of common law principles. In 1973, the Legislature enacted "An Act to Clarify Title to Roads and Ways." P.L. 1973, c. 505, enacting 33 M.R.S.A. §§ 460-469. The Legislature viewed this set of statutes as the codification of existing common law. See L.D. 983, Statement of Fact (106th Leg.). As applied in this case, the centerpiece of those statutes is found in section 465, which

---

[4] The record on the parties' cross-motions for summary judgment revealed a genuine and material factual contention of the relative locations of the southeasterly boundary of the land on which the Horseshoe Road sits and the northwesterly boundary of lot 25 as that boundary is described in the deeds that were used to convey title to lot 25. From the trial record, however, it is clear that on the face of the earth, as it is described in the deeds, the northwesterly boundary of lot 25 abuts the boundary of the land that is now partially consumed by the road. The testimony of the defendants' expert affirmatively establishes this point, and there is no meaningful evidence to the contrary.

3

provides that in the absence of certain circumstances, "[a]ny person owning land in this state abutting a town or private way . . . shall be deemed to own to the centerline of such road or way . . . ." Here, the defendants argue that pursuant to section 465, their legal interest runs to the center of the right-of-way in which the Horseshoe Road is located and that they therefore own the disputed area, even though the legal description of lot 25 does not include that small area.

Of the circumstances that would make section 465 inapplicable, the only one that arguably applies here is found in section 461.[5] Section 461 provides that a conveyance of a parcel that abuts a town or private way, when that conveyance predated the statute's effective date, also conveyed the grantor's interest in that town or private way unless the grantor expressly reserved his title to that interest, as specified in the deed. By its express terms, however, section 461 "shall not apply to any conveyance of a lot or lots by reference to a recorded plan." In this latter respect, section 461 differs from section 460, which controls conveyances occurring after the effective date of that statute; in that latter class of conveyances, the transfer of a lot that is described by reference to a recorded plan does not defeat the grantee's interest in the abutting way. Here, the conveyances of lot 25 – including the conveyance of lot 25 to the defendants – were accomplished by deeds that merely referred to the Stadia survey. None of those deeds set out a more thorough or formal description of the parcel. Therefore, section 461 is inapposite here.

From this, the court also concludes that section 465 itself does not apply. In pertinent part, section 465 provides that when a grantor or that grantor's predecessor in title does not reserve title under an abutting road pursuant to section 461, then the grantee owns to the centerline of that road. Here, however, section 461 does not affect Powers' fee interest in the road as a result of his conveyance of lot 25 to the defendants' predecessor in interest, because section 461 does not apply. Thus, the statutory predicate

---

[5] By its own terms, section 465 states that the terms of that statute do not apply: if the grantor expressly reserves title to the abutting way (section 461); when a grantor preserved an interest in the way by filing a notice in the appropriate registry of deeds (sections 462 and 463) – and here the parties have stipulated that neither the plaintiffs nor their predecessors in interest did so; when a governmental entity owns the road (section 466); or that a public easement exists on both sides of a road in unequal proportions (section 467). *See generally Lamb v. Euclid Ambler Associates*, 563 A.2d 365, 367-68 (Me. 1989). None of these exceptions to section 465 is applicable.

4

to a grantee's ownership of the fee under the road, up to the centerline, has not – and cannot – be satisfied in the circumstances of this case. Lot 25 was always transferred by means of an instrument that referred to a recorded plan; the grantor was therefore not required to expressly reserve his interest in the fee to the abutting private way, in order to retain that fee; and because he was not required to declare that reservation, the condition under section 465 that otherwise would trigger a grantee's rights to that fee in the way is not satisfied.

This conclusion finds independent support in a common law analysis. Under the common law, "a grant of land bounded on a highway carries the fee to the centre of it, if there be no words to show a contrary intent." *Sunderland v. Jackson*, 32 Me. 80, 82 (1850). *See also Brooks v. Bess*, 135 Me. 290, 291, 292 (1937) (referring to the "presumption of centerline ownership").[6] However, when the conveyed parcel is described by reference to a plan rather by an independent or freestanding deed description, then the grantor is no longer presumed to have transferred the fee under the abutting way. A plan such as the Stadia survey in the case at bar "clearly delineates the limits of each [the lot and the way], and a conveyance of the lot by the plan does not carry the fee to the centre of the way, for in order to have that effect, the grant must extend beyond the southern line of the lot as laid down in the plan." *Sunderland*, 32 Me. at 83. *See also Bradford v. Bradford*, 158 Me. 140, 146 (Me. 1962) ("When a conveyance expressly refers to a plan, that plan becomes part of the deed, with the same force and effect as if copied into the deed, and is subject to no other explanation by extraneous evidence that if all the particulars of the description had been actually inserted in the body of the deed."). This common law principle is nothing more than an extension of the basic concept that the "presumption of centerline ownership" fails when the instrument of conveyance reflects the grantor's intent to retain ownership of the fee to the abutting way. When the grantor chooses to describe the subject parcel by referenced to a

---

[6] The plaintiffs attempt to divine Powers' intent on the basis of circumstances extrinsic to the deed to lot 25 (for example, by the terms of subsequent conveyances). This approach, however, is not supported by the common law under *Sunderland* or by the Legislature's understanding of that common law, as shown in section 461, because they appear to require proof of a contrary intent (defeating the presumption of an intent to convey up to the centerline of the way) only by the "words" within the instrument of conveyance, and not by extrinsic evidence.

plan that concretely delineates the parameters of that parcel, that mode of description can be seen as a reflection of the grantor's intent not to convey anything beyond the boundaries shown in the plan.

Section 461 embodies this common law exception to the "presumption of centerline ownership," because, under that statute, the effect of that presumption is statutorily inapplicable in "any conveyance of a lot or lots by reference to a recorded plan." Just as the Legislature expressed a general intention that 33 M.R.S.A. §§ 460 *et seq.* represents a codification of common law principles regarding the ownership of a way, *see* L.D. 983, Statement of Fact (106th Leg.), the specific terms of section 461 do so. Here, because the defendants and all of their predecessors in interest acquired title to lot 25 through deeds that described the parcel by reference to a recorded plan, the court concludes, under both statutory and common law analyses, that those grantees did not obtain any interest in the fee of the right-of-way. Therefore, the defendants hold title only to the parcel as limited by the boundaries depicted in the Stadia survey.[7] Rather, Powers retained title to the land within the right-of-way abutting lot 25. This area was included in the land that Powers conveyed to the plaintiffs in 1971.

The court therefore concludes that on the face of the earth, the boundaries of the defendants' interest associated with lot 25 are located as follows, with reference to the standard boundary survey admitted into evidence as defendant's exhibit 3: the southeast and southwest boundaries are as depicted by the heavier, dark lines; and the northeast and northwest boundaries are as depicted by the dotted lines shown on the southeast side of the Horseshoe Road.[8]

### B. Trespass claim

The plaintiffs next argue that they are entitled to relief under 14 M.R.S.A.

---

[7] The Stadia survey sets out the distances for the boundaries of lot 25. Those distances as measured in the field by the defendants' expert are slightly different from those found in the Stadia survey. Those deviations are not significant and may be explained by the fact that the Stadia survey is not as precise as modern standard boundary surveys can be. For this reason, the court accepts the testimony of the defendants' expert about the location of the boundaries of lot 25 as those boundaries exist on the face of the earth.

[8] The defendants also own the twenty foot wide strip that abuts the northeast boundary of lot 25.

§ 7551-B for trespasses committed by the defendants.[9] In their written argument, the plaintiffs identify the factual bases for their statutory trespass claim. They include moving snow onto the disputed land, constructing an ornamental fence, mowing the area and damaging or destroying some flowers with a string trimmer. None of these acts falls within the scope of conduct that is prohibited by section 7551-B(1). Consequently, the plaintiffs have not established that the defendants have violated section 7551-(B), and the defendants are not liable for any of the forms of damage that constitute forms of relief otherwise available under that provision.

The entry shall be:

For the foregoing reasons, judgment on the complaint is entered for the plaintiffs. Declaratory judgment is entered regarding the parties' rights to the real property located within the right-of-way and abutting lot 25. On the face of the earth, the boundaries of the defendants' interest associated with lot 25 are located as follows, with reference to the standard boundary survey admitted into evidence as defendant's exhibit 3: the southeast and southwest boundaries are as depicted by the heavier, dark lines; and the northeast and northwest boundaries are as depicted by the dotted lines shown on the southeast side of the Horseshoe Road.

On the plaintiffs' statutory claim for trespass, judgment is entered for the defendants.

The request for relief in the counterclaim is denied.

Dated: May 31, 2002

_____
Justice, Maine Superior Court

---

[9] The plaintiffs have not pursued a common law trespass claim. Further, in the caption of their complaint, the plaintiffs cite 14 M.R.S.A. §§ 7551-7561 as the statutory grounds for their statutory trespass claim. In their written argument, however, they rely only on section 7551-B. The court therefore considers their claim based on that one provision.

7

Date Filed ___9/19/2000___ ___PENOBSCOT___ Docket No. ___RE-2000-52___

County

TITLE TO REAL ESTATE INVOLVED

Action ___REAL ESTATE - TRESPASS___

COUNTERCLAIM (Judgment on 11/8/01)

JUSTICE JEFFREY L. HJELM
ASSIGNED

FRANKLIN L. WATTS and
MILDRED L. WATTS

HOWARD T. WATTS and
SANDRA J. WATTS

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| TANOUS AND SNOW<br>P O BOX 246 - 29 Main Street<br>EAST MILLINOCKET ME 04430-0246<br>BY: Wakine G. Tanous, Esq. | PAINE, LYNCH & HARRIS<br>P O BOX 1451 - 123 Center Street<br>BANGOR ME 04402-1451<br>BY: Martha J. Harris, Esq. |
| PELLETIER & FAIRCLOTH<br>43 COLUMBIA STREET<br>BANGOR, ME 04401<br>BY: Amy L. Faircloth, Esq.<br>**co-counsel** | |

| Date of Entry | |
|---|---|
| 9/19/00 | Removal from Millinocket District Court, Docket No. MIL-RE-00-13. The following papers were received and filed:<br>1. Complaint - Trespass Pursuant to Title 14 M.R.S.A. Section 7551-7561 (Exhibits 1 thru 8 attached)<br>2. Officer's Return of Service as to Sandra J. Watts (s.d. 8/28/00)<br>3. Officer's Return of Service as to Howard T. Watts (s.d. 8/28/00)<br>4. Notice of Removal by Defendants<br>5. Affirmative Defenses, Answer and Counterclaim<br>6. Attested copy of the Millinocket District Court Docket Entries<br>7. Miscellaneous correspondence |
| 9/20/00 | Notice of Removal form forwarded to attorneys of record. |
| 9/22/2000 | Scheduling Order Filed. Discovery Deadline is June 1, 2001. (Hjelm,J) copy forwarded to all attorneys of record. |
| 10/2/00 | Affirmative Defenses and Answer to Counterclaim filed by Plaintiffs. |
| 10/25/00 | Notification of Discovery Service filed by Plaintiffs, Request for Admissions, Interrogatories by Defendants. |
| 11/29/00 | Notification of Discovery Service filed by Plaintiffs, Answers to Requests for Admissions. |
| 12/1/2000 | Notification of Compliance with Discovery Service Filed by Plaintiffs; Plaintiff, Mildred L. Watts', Answers to Interrogatories; Plaintiff, Franklin L. Watts', Answers to Interrogatories. |
| 12/22/00 | Plaintiffs' Designation of Expert Witnesses and Rule 26(B)(4) Information filed. |